STATE OF CONNECTICUT *v.* BARRY DEMARTIN
(6980)

DUPONT, C. J., SPALLONE and LAVERY, Js.

Argued October 20, 1989—decision released January 2, 1990

*Judith A. Sarathy*, special public defender, with whom, on the brief, was *Temmy Ann Pieszak*, for the appellant (defendant).

*Geoffrey E. Marion*, deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *David P. Gold*, assistant state's attorney, for the appellee (state).

SPALLONE, J. The defendant appeals his conviction, after a jury trial, of the crime of manslaughter in the second degree in violation of General Statutes § 53a-56 (a) (1).

The defendant's sole claim is that the trial court erred in its charge to the jury on justified physical force in defense of a third person as defined by General Statutes § 53a-19.[1] The defendant alleges that the court incorrectly defined "initial aggressor" so as to eliminate the defendant's justification if the jurors found that the deceased had threatened imminent physical harm but the defendant had been the first to strike a blow.

---

[1] General Statutes § 53a-19 provides in pertinent part: "(a) . . . a person is justified in using reasonable physical force upon another person to defend himself or a third person from what he reasonably believes to be the use or imminent use of physical force, and he may use such degree of force which he reasonably believes to be necessary for such purpose . . . .

"(c) . . . a person is not justified in using physical force when (1) with intent to cause physical injury or death to another person, he provokes the use of physical force by such other person, or (2) he is the initial aggressor . . . ."

The jury could reasonably have found the following facts. Shortly after midnight on March 27, 1987, the patrons were gathered at the Greenwood Lodge in Meriden. In a room adjoining the bar area, the victim, Richard Serio, was shooting pool with Jill Thayer. Serio's girl friend, Shawn Godfrey, was tending bar. The defendant, Barry DeMartin, was seated at a table with his sister, Rhonda DeMartin, his girl friend, Rhonda Gerard, and his sister's boyfriend, Edward Jaskot. Both the victim and the defendant appeared to be intoxicated.

During the evening, these two groups of people became embroiled in several disputes among themselves and with each other. Rhonda DeMartin and Rhonda Gerard argued and tussled with Thayer over who had last put money in the jukebox. Thayer shortly thereafter saw the defendant holding his pool cue to Rhonda Gerard's throat. When Thayer made a comment to the defendant, Rhonda DeMartin responded unpleasantly and punched Thayer in the face. Thayer thereupon threw her pool cue at Rhonda DeMartin.

The two women engaged in an increasingly vociferous shouting match until Shawn Godfrey, in an attempt to break up the altercation, ordered the unruly patrons to leave. Rhonda DeMartin, refusing to leave, got into a hair-pulling fistfight with Godfrey. As Godfrey tried to push Rhonda DeMartin through the exit door of the poolroom, Rhonda Gerard entered into the brawl and was thrown to the floor. The defendant stepped in and punched Godfrey in the stomach.

While Thayer and the victim looked on, Godfrey, the two Rhondas and the defendant skirmished near the exit door. The victim at this point started toward the melee. According to some witnesses, the defendant moved toward the victim and struck him on the side of his head with a pool cue. The defendant and other witnesses testified that the victim was on Rhonda

DeMartin's back, pulling her hair, when the defendant struck the victim with a pool cue. All witnesses saw the victim fall, but could not agree on whether he struck his head on a bench as he collapsed.

The police arrived moments later, at approximately 12:31 a.m., and saw the defendant walking away from the bar. An ambulance arrived within minutes and transported the victim to a hospital, where he was declared dead. The cause of death was determined to be blunt head trauma with internal hemorrhaging.

The police went to the defendant's home at approximately 3:15 a.m. and were told by the defendant that he had not been involved in a fight and that he had left the bar at 10:45 p.m. the previous night. He was subsequently arrested and tried to a jury on the charge of manslaughter in the first degree. DeMartin's defense was that he was justified in using force to defend his sister from the victim's attack. He was convicted of the lesser included offense of manslaughter in the second degree and this appeal followed.

The defendant's claim of error focuses entirely on whether the trial court incorrectly defined "initial aggressor" in its jury charge on the defense of justification. The defendant introduced sufficient evidence at trial to entitle him to an instruction on the defense of justification. See *State* v. *Folson,* 10 Conn. App. 643, 646, 525 A.2d 126 (1987). Specifically, the defendant alleged and testified that he acted to defend his sister from an assault by the victim. Accordingly, the trial court instructed the jury on the defense of a third person under General Statutes § 53a-19 (a). See *State* v. *Silveira,* 198 Conn. 454, 470, 503 A.2d 599 (1986) (statute covers defense of third person). The court also twice charged the jury on the "initial aggressor" exception to the defense of justification, pursuant to § 53a-19 (c). In explaining the term, the court twice stated that "a person is not justified in using physical force if, intend-

ing to cause injury to the other person he is the initial aggressor, that is the first one to use physical force."

The defendant concedes that in defending his sister he struck the first blow against the victim. He denies that he is therefore necessarily the initial aggressor because the statute clearly contemplates that an initial aggressor may also be the party who, by word or deed, threatens the imminent use of force and thereby provokes another to strike the first blow. See *State* v. *Silveira,* supra. The defendant argues that the court erroneously excluded this distinction from the definition of an initial aggressor and so deprived him of the defense of justification.

As a threshold question, we must decide whether the defendant's claim is reviewable. The defendant at trial failed to file a relevant request to charge and failed to object to the charge as given. The defendant, therefore, asks us to review this claim under *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973), or, alternatively, under the doctrine of plain error. Practice Book § 4185; see *State* v. *Ramirez,* 16 Conn. App. 284, 290, 547 A.2d 559, cert. denied, 209 Conn. 828, 552 A.2d 434 (1988).

"A claim not raised at trial is reviewable only if the record adequately supports a claim that the defendant has clearly been deprived of a fundamental constitutional right and a fair trial." *State* v. *Anderson,* 212 Conn. 31, 36, 561 A.2d 897 (1989); *State* v. *Golding,* 213 Conn. 233, 239, 567 A.2d 823 (1989). The defendant's claim implicates a fundamental constitutional right because "instructions that misstate the statutory defense of self-defense unconstitutionally implicate a defendant's due process right to establish a defense." *State* v. *Preyer,* 198 Conn. 190, 198, 502 A.2d 858 (1985).

The record here indicates, however, that this claim of an erroneous jury instruction is not truly of constitu-

tional proportions. See *State* v. *Golding,* supra, 240; *State* v. *Bailey,* 209 Conn. 322, 329–30 n.4, 551 A.2d 1206 (1988). The court's obligation to define the defense of justification " ' "does not transform every deviation from the particular statutory definition . . . into a constitutional error." ' *State* v. *Utz,* 201 Conn. 190, 202, 513 A.2d 1191 (1986)." *State* v. *Huff,* 10 Conn. App. 330, 335, 523 A.2d 906, cert. denied, 203 Conn. 809, 525 A.2d 523 (1987). A party is not entitled to a charge that is beyond criticism in every respect. *State* v. *Harman,* 198 Conn. 124, 134, 502 A.2d 381 (1985). "[I]ndividual instructions are not to be judged in artificial isolation from the overall charge." *State* v. *Reddick,* 197 Conn. 115, 132, 496 A.2d 466 (1985), cert. denied, 474 U.S. 1067, 106 S. Ct. 822, 88 L. Ed. 2d 795 (1986); *State* v. *Anderson,* supra, 37. We must determine whether, in the light of the charge as a whole, it was reasonably possible that the jury was misled. *State* v. *Laracuente,* 205 Conn. 515, 524, 534 A.2d 882 (1987), cert. denied, 485 U.S. 1036, 108 S. Ct. 1598, 99 L. Ed. 2d 913 (1988); *State* v. *Drummy,* 18 Conn. App. 303, 311, 557 A.2d 574 (1989).

We find that the court's instructions on justification as a whole "fairly presented the case to the jury so that no injustice was done to the legal rights of the defendant." *State* v. *Timmons,* 7 Conn. App. 457, 470, 509 A.2d 64 (1986), appeal dismissed, 204 Conn. 120, 526 A.2d 1340 (1987). The court's charge followed closely the applicable portions of General Statutes § 53a-19 and the self-defense instruction set forth in D. Borden & L. Orland, Connecticut Criminal Jury Instructions § 6.1.[2] The court twice stated that "[a] person is justified in using reasonable physical force upon another person to defend

[2] 5 Connecticut Practice, D. Borden & L. Orland, Connecticut Criminal Jury Instructions § 6.1, entitled "Self-Defense," set forth in pertinent part:

"Finally, a person is not justified in using physical force if, intending to cause physical injury to the other person . . . . he is the initial aggressor—that is, the first one to use physical force."

a third person from what he believes to be the use or imminent use of physical force and he may use such degree of force which he reasonably believes to be necessary for the purpose." Overall, the court made no less than six statements to the effect that the defense of justification would be available to the defendant if he acted to defend a third person from the imminent use of physical force. The court gave a detailed explanation of the term "reasonableness." The court also and properly emphasized that the burden remained on the state to disprove the defense of a third person beyond a reasonable doubt. It was made abundantly clear that the defendant could be the first to use force without being the initial aggressor. We conclude therefore that it was not reasonably possible that the jury was misled.

We also decline to review the defendant's unpreserved claim under the doctrine of plain error which is properly used only to preserve the integrity of the judicial process and to avoid fundamental injustice, and not simply to detect errors of even constitutional proportions. *State* v. *Luca,* 19 Conn. App. 668, 670–71, 563 A.2d 752 (1989). In the context of the jury charge as a whole, we do not find that the court's definition of initial aggressor " ' "result[ed] in an unreliable verdict or a miscarriage of justice." ' " *Smith* v. *Czescel,* 12 Conn. App. 558, 563, 533 A.2d 223, cert. denied, 206 Conn. 803, 535 A.2d 1316 (1987), quoting *State* v. *Hinckley,* 198 Conn. 77, 88, 502 A.2d 388 (1985). Under the facts and circumstances of this case, any error in the jury instructions was harmless beyond a reasonble doubt. See *State* v. *Scott,* 10 Conn. App. 347, 353, 522 A.2d 1245, cert. denied, 204 Conn. 804, 528 A.2d 1152 (1987) (determination of plain error depends on harmfulness of failure).

There is no error.

In this opinion the other judges concurred.