STATE OF CONNECTICUT *v.* JULIUS BROWN
(11713)

FOTI, LAVERY and SPEAR, Js.

Argued June 6—decision released August 30, 1994

*Temmy Ann Pieszak,* assistant public defender, for the appellant (defendant).

*Jacqueline J. Footman,* assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *Mary Elizabeth Baran* and *Elpedio Vitale,* assistant state's attorneys, for the appellee (state).

FOTI, J. The defendant appeals the judgment of conviction, rendered after a jury trial, of robbery in the first degree in violation of General Statutes § 53a-134 (a) (3), assault in the first degree in violation of General Statutes § 53a-59 (a) (1), attempted assault in the first degree in violation of General Statutes §§ 53a-49 (a) (2) and 53a-59 (a) (1), burglary in the third degree in violation of General Statutes § 53a-103 (a), and two counts of assault of a peace officer in violation of General Statutes § 53a-167c (a) (1). The defendant claims that the trial court improperly instructed the jury on (1) intoxication, (2) reasonable doubt, and

(3) self-defense. He also claims that the trial court improperly failed to instruct on an essential element of the offense of robbery in the first degree, and improperly commented on the defendant's credibility. We reverse the judgment with respect to the robbery conviction and affirm the balance of the judgment.

The jury reasonably could have found the following facts. On February 1, 1991, just prior to 11 p.m., the victim was walking in the vicinity of Mansfield Street in New Haven, when she was accosted by the defendant, whom she had met previously. Brandishing a screwdriver, the defendant forced her into an alleyway and demanded money. After seizing her pocketbook, he required her to disrobe and he searched each article of clothing for money. He then ran off with the victim's pocketbook.

At approximately 11 p.m., two officers of the Yale University police department, John Sequino and William Kraszewski, were patrolling parking lots in the vicinity of Prospect Street in New Haven, when they observed a car with its flashers on. As they pulled their vehicle behind that car, they observed movement inside the car and broken glass on the ground near the window on the passenger's side. They concluded that the car had been broken into and that the perpetrator was still inside. Kraszewski approached the driver's side and Sequino the passenger's side. Sequino reached in through the broken window and grabbed the defendant by the leg as the defendant attempted to exit by the door on the driver's side. The defendant kicked at Sequino and stabbed at him with a screwdriver, striking his hand. Kraszewski struggled with the defendant on the driver's side and the defendant attempted to stab him in the head, neck and shoulder with the screwdriver. The defendant then broke free and fled.

Following a short pursuit, the defendant was found hiding beneath a garbage truck parked on Yale University property and was apprehended.

At the time of the incident, both officers were dressed in plain clothes and each wore a police badge on a chain around his neck. Upon seizing the defendant, they identified themselves as police officers. The victim identified the defendant at the scene as the man who had accosted her and stolen her pocketbook. The owner of the vehicle in which the defendant was found had not given him or anyone else permission to be in that car. As a result of the puncture wound to his hand, Sequino sustained a permanent partial disability, consisting of the loss of movement in the last joint of his index finger.

The defendant testified that he had consumed some alcohol that evening and denied any contact with the female victim. Although he admitted to having a screwdriver, he denied stabbing or attempting to stab anyone, and claimed self-defense as a result of the struggle with the two officers. He claimed that they did not identify themselves as police officers, that he did not recognize them as such because the lighting was poor and they were not in uniform, and that he believed he was being assaulted by the owners of the car.

I

The defendant submits that the trial court's instructions on intoxication deprived him of his due process rights under article first, § 8, of our state constitution and the fourteenth amendment to the United States constitution. He claims that the instructions were so confusing that they relieved the state of its burden of proving intent beyond a reasonable doubt, set an improperly high standard by which the jury should evaluate the evidence, and improperly required the jury

to find first that the state had sustained its burden in proving intent, and only then to determine whether intoxication negated that intent.

This claim was not properly preserved for appellate review; the defendant claims reviewability under the *Evans-Golding*[1] standard. We review this claim because it alleges that there was a shifting or diminishing of the state's burden of proof and that there was constitutional error in the instructions on intent, which constitutes a violation of a fundamental constitutional right. See *State* v. *Stevenson,* 198 Conn. 560, 567–72, 504 A.2d 1029 (1986).

Where a main issue to be determined at trial is intent, we will closely scrutinize the trial court's instructions to determine whether the jury could have been misled. *State* v. *Robinson,* 204 Conn. 207, 210, 527 A.2d 694 (1987). Our review is guided by the established rule that jury instructions are not to be subjected to microscopic examination with an eye toward discovering possible inaccuracies. *State* v. *Ortiz,* 217 Conn. 648, 667, 588 A.2d 127 (1991). Instead, we must consider the entire charge to determine its effect on the jury in guiding it to a proper verdict; *State* v. *Corchado,* 188 Conn. 653, 660, 453 A.2d 427 (1982); and whether it was reasonably possible that the charge as a whole, as to intent and the effect of intoxication on intent, misled the jury. See *State* v. *Castonguay,* 218 Conn. 486, 498, 590 A.2d 901 (1991); *State* v. *Grullon,* 212 Conn. 195, 204, 562 A.2d 481 (1989). If the challenged instructions accurately state the law, there is no reasonable possi-

---

[1] *State* v. *Golding,* 213 Conn. 233, 239–42, 567 A.2d 823 (1989); *State* v. *Evans,* 165 Conn. 61, 69–70, 327 A.2d 576 (1973). In order to prevail on an unpreserved claim, the defendant must meet the following four-prong test: (1) the record must be adequate for review; (2) the claim must be of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged violation must clearly exist and clearly deprive the defendant of a fair trial; and (4) the error, if any, must not be harmless. *State* v. *Golding,* supra, 239–40.

bility that they misled the jury. *State* v. *Fernandez,* 27 Conn. App. 73, 83, 604 A.2d 1308, cert. denied, 222 Conn. 904, 606 A.2d 1330 (1992). Specifically, our inquiry is whether "the court provided the jury with an accurate and comprehensive explanation of the relationship between the state's burden of proving the element of specific intent and the defendant's evidence of his intoxication." Id., 85. Our review of the instructions persuades us that the jury could not reasonably have been misled either on the state's burden of proof on the element of intent, or on the jury's responsibility to consider the effect of the defendant's evidence of intoxication in determining whether the state satisfied its burden of proving the requisite intent beyond a reasonable doubt.

The defendant argues that the trial court improperly instructed that the jury should consider evidence of intoxication separately and only after determining that the state had proven intent beyond a reasonable doubt. He posits that this denied him the opportunity to have the jurors evaluate the effect of the intoxication evidence when first deciding the intent issue, and also whether the intoxication evidence cast a reasonable doubt on the proof of intent, rather than merely whether that evidence wholly negated intent. We do not agree.

The court first instructed on the necessary elements constituting each crime charged and that the state had to prove each element beyond a reasonable doubt. Thereafter, the court instructed: "Now, if you find that the state proved beyond a reasonable doubt that the defendant caused serious physical injury to John Sequino by means of a dangerous instrument, then in considering the state's proof of the element of the defendant's intent to cause such injury, you must first look to the defendant's claim that he was in a state of intoxication which rendered him incapable of formulat-

ing the required intent. Before you even get to that, though, you must have each of the elements proven to you beyond a reasonable doubt, that is, that the defendant intended to cause serious physical injury to John Sequino, that he did, in fact, cause serious physical injury, and that he caused it by use of a dangerous instrument. So, you must find that the item used falls into the category of dangerous instrument and that the injury suffered by Mr. Sequino was, in fact, a serious physical injury.''[2]

---

[2] The court further instructed on intoxication as follows: ''Now, as I indicated, the defendant has raised the issue of his drinking to a point of intoxication, and there was some evidence offered by him that he had been drinking for quite a period of time that day, and there was also testimony from others as to the amount of liquor that [the defendant] had, an intake of alcohol, the intake of alcohol that he had during that period of time. Now, the claim, in effect, is that he was too intoxicated to form a specific intent.

''So, I am required to instruct you on the law of intoxication as it relates to the issue of intent. Again, we have a statute that covers this matter and it provides, insofar as it is relevant here, that intoxication is not a defense to a criminal charge, but in any prosecution for an offense evidence of the defendant's intoxication may be offered by the defendant whenever it is relevant to negate an element of the crime charged.

''So, I'll repeat that, it is not a defense to a criminal charge, but evidence of it may be offered to negate the element of the crime charged of intent.

''So, intoxication here means a substantial disturbance of mental or physical capacities resulting from the introduction of substances into the body, including alcohol.

''As applied here, it means that if you find that the defendant was so intoxicated that he was not mentally able even to form the intent to commit the crime, then the intent element of the crime charged would not be proven and you would be required to acquit the defendant of that charge. This does not mean, however, that the defendant has the burden of proving that he was too intoxicated to form the intent required as an element of the crime. The state retains the burden of proof beyond a reasonable doubt on this issue of intent as on all the other elements of the crime.

''The simple fact alone, however, that the defendant may have been intoxicated at the time that the crime was committed is not enough for you to find for the defendant on this issue. You must, if you are to find for the defendant on this issue, find that while he was committing the physical assault on John Sequino, and whatever the other intent were as to the other crimes—because this may be applicable to other crimes that we are talking about here, and I'll make reference to that as we go along—but if you

Our Supreme Court has repeatedly stated that whether a charge is possibly misleading depends on the substance rather than the form of what is said. *State v. Ortiz,* supra, 217 Conn. 662; *State v. Stevenson,* supra, 198 Conn. 571; *State v. Kurvin,* 186 Conn. 555,

are to find for the defendant on this issue of intoxication, you must find that while he was committing the physical assault on the victim, he was so intoxicated that his mind was incapable of forming the intent to do so. It is only if you find that his intoxication was to this degree and with this result that you should consider it.

"If, however, you find that he was not intoxicated or, that he was intoxicated but not so extremely so that he could not form the required intent, you should disregard the evidence of his intoxication and not consider it on the element of intent.

"Now, whether or not the defendant was so intoxicated that he could not and did not form the required intent as to this crime is a question of fact for you to determine."

Thereafter the court instructed as to the attempted assault charge: "And as to this particular crime also you may consider the defendant's claim as to intoxication, and as to whether or not his claims of intoxication would negate the evidence relating to his intent to such a degree that the state would not have proven his intent to commit the crime of assault in the first degree.

"So, intoxication would be applicable—consideration of intoxication would be applicable to your consideration of the crime of attempt in the first degree—attempted assault in the first degree.

"If you find the defendant not guilty of the crime of attempted assault in the first degree for some reason other than the fact that he was intoxicated and, therefore, could not form the necessary or required intent, you may consider whether or not he was guilty of the crime of—the lesser included crime of assault—of attempted assault in the second degree, and attempted assault in the second degree by means of a dangerous instrument."

The court further instructed as to the burglary charge: "In fact, the defendant himself testified as to the circumstances and he really does not deny having gone into the vehicle and attempted to remove the radio or stereo. However, he does, by his claim of intoxication, ask you to consider that claim as it [affects] on your determination as to whether or not the state has proven the elements of intent.

"In other words, if you find that he was intoxicated to such an extent, and I defined it for you earlier, that he was not able to formulate the intent to commit a crime within the vehicle, then, of course, you should find him not guilty."

The court also instructed that intoxication could be considered as it related to the element of intent required for assault on a peace officer.

565, 442 A.2d 1327 (1982). "While it is true that an instruction containing a misstatement of the law is more likely to be prejudicial than an instruction that contains an omission or an incomplete statement of the law . . . an incorrect instruction to the jury may be cured by a later correct instruction . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Harrison,* 32 Conn. App. 687, 696–97, 631 A.2d 324, cert. denied, 227 Conn. 932, 632 A.2d 708 (1993).

In the present case, the trial court told the jurors that "[b]efore you even get to [intoxication], though, you must have each of the elements proven to you beyond a reasonable doubt," including the element of intent. This single statement, taken alone, may have been misleading. The trial court, however, properly instructed the jury, before and after this statement, that intoxication could be considered in determining whether the requisite intent had been established by the state. The trial court's instructions not only recited the statutory definition of intoxication in General Statutes § 53a-7, but also clearly explained the role of intoxication evidence and its relevance in potentially negating the element of intent required for conviction of a specific intent crime. The court specifically instructed that if the jury found "that the defendant was so intoxicated that he was not mentally able even to form the intent to commit the crime charged, then the intent element of the crime would not be proven."

Further, the court instructed that the jury should consider whether the defendant's "claims of intoxication would negate the evidence relating to his intent to such a degree that the state would not have proven his intent to commit the crime . . . ." The court made it clear that it was the jury's function as fact finder to make such a determination, and instructed "[n]ow, whether or not the defendant was so intoxicated that he could

not and did not form the required intent as to this crime is a question of fact for you to determine." The instructions also accurately and comprehensively relayed to the jury that the defendant had no burden of proving he was too intoxicated to form the intent necessary to the commission of the crime, but rather that the state retained that burden of proof beyond a reasonable doubt on the issue of intent as well as all the other elements of the crime.

Our perusal of the charge as a whole discloses that the instructions on intoxication, coupled with the court's instructions on the presumption of innocence and the state's burden of proof, sufficiently apprised the jury that the evidence introduced by the defendant of his intoxication was for the purpose of negating the element of specific intent, and that the state was required to overcome that evidence by establishing, beyond a reasonable doubt, the specific intent required for each crime charged.

Accordingly, we conclude that there was no reasonable possibility that the jury could have been misled by these instructions.

## II

The defendant alleges that the trial court improperly instructed that "a reasonable doubt is a doubt for which a valid reason can be assigned." This claim is not properly preserved. There is no clear deprivation of a fundamental constitutional right. *State* v. *Thomas,* 214 Conn. 118, 120, 570 A.2d 1123 (1990). Our Supreme Court has previously rejected challenges to the same or similar instructions. *State* v. *Adams,* 225 Conn. 270, 290–91, 623 A.2d 42 (1993).[3] The trial court's instruction did not infringe on a clear constitutional right as

[3] See also *State* v. *Goodman,* 35 Conn. App. 438, 441–43, 646 A.2d 879 (1994) (challenge to similar instruction was properly preserved and instruction found not improper).

is required for review under *Evans-Golding*.[4] *State* v. *Campbell*, 225 Conn. 650, 661, 626 A.2d 287 (1993).

## III

The defendant also claims that the trial court improperly instructed on the "initial aggressor" exception to the defense of self-defense in violation of his state and federal due process rights. The defense related only to the two counts of assault of a peace officer.

The court charged as follows: "A person is justified in using reasonable physical force upon another person to defend himself from what he reasonably believes to be the imminent use of physical force . . . a person is not justified in using physical force if, intending to cause physical injury to the other person, he provokes the use of physical force by the other person or if he is the initial aggressor—is the first one to use physical force. Now, whether the defendant believes the degree of force he used is reasonable, whether he provoked the use of force, whether he was the aggressor are questions of fact for you to determine from the evidence. . . . If the actions of the police officers were not lawful, or if they were not identifiable to him, then you may consider whether or not his actions were reasonable as self-defense to what he considered to be an attack on his person."

The instruction given is erroneous on its face because it equates "initial aggressor" to "the first one to use physical force." We cannot conclude, however, that it was harmful to the defendant since all of the evidence clearly demonstrated that the defendant was not the first to use physical force.

The state does not dispute that the first person to use physical force is not necessarily the initial aggres-

---

[4] See footnote 1.

sor pursuant to General Statutes § 53a-19 (c) (2).[5] *State* v. *Jiminez,* 228 Conn. 335, 340–41, 636 A.2d 782 (1994); *State* v. *DeMartin,* 20 Conn. App. 430, 434, 568 A.2d 1034, cert. denied, 214 Conn. 803, 573 A.2d 316 (1990). The state argues, however, that on the basis of the facts presented to the jury, this matter can be distinguished from *DeMartin* and *Jiminez.* We agree that this case is distinguishable.

*DeMartin* and *Jiminez* both involved situations where the defendant conceded that he was the first to use physical force, but sought to justify it as a preemptive strike necessary to counter the imminent use of physical force by another. In this case, both the defendant and the state presented evidence that the police officers were the first to use physical force. The defendant argued at trial that he used physical force because he did not recognize the men as police officers because they were not in uniform and because the lighting was poor. The defendant testified that he began to flail and kick the officer *only after* the officer had reached into the car and grabbed him, and that the second officer, on the driver's side, grabbed him around the neck and beat him with some kind of instrument. In fact, the state writes in its brief, "it was clear that the officers were using physical force at the time the defendant acted and that *the defendant was not the initial aggressor.*" (Emphasis added.)

This claim was not properly preserved for appeal and the defendant seeks review under *Evans-Golding.*[6] "The court's obligation to define the defense of justifi-

---

[5] General Statutes § 53a-19 (c) provides in relevant part: "Notwithstanding the provisions of subsection (a) of this section, a person is not justified in using physical force when . . . (2) he is the initial aggressor, except that his use of physical force upon another person under such circumstances is justifiable if he withdraws from the encounter and effectively communicates to such other person his intent to do so, but such other person notwithstanding continues or threatens the use of physical force . . . ."

[6] See footnote 1.

cation does not transform every deviation from the particular statutory definition . . . into a constitutional error." (Internal quotation marks omitted.) *State* v. *DeMartin,* supra, 20 Conn. App. 435. Where the claimed error is one of constitutional magnitude, we must determine whether, in light of the charge as a whole, it is reasonably possible that the jury was misled. *State* v. *Utz,* 201 Conn. 190, 196–97, 513 A.2d 1191 (1986).

Our limited review of this unpreserved claim leads us to conclude that it is not reasonably possible that the instruction, viewed in its entirety, misled the jury. *State* v. *Avila,* 223 Conn. 595, 607, 613 A.2d 731 (1992). The propriety of the trial court's instruction on this point was irrelevant because the question of who was the initial aggressor was not an issue in the case and, therefore, could not have affected its outcome. As a result, it is not reasonably possible that the jury was confused or misled by the improper instruction. See *State* v. *Campbell,* supra, 225 Conn. 661 (court's instruction did not make drug dependency issue because there was no evidence of drug dependency offered by defendant).

## IV

The defendant next claims that the trial court improperly failed to instruct on an essential element of the offense of robbery in the first degree. We agree.

The defendant argues that the trial court's instructions were inadequate in that the court never read or paraphrased General Statutes § 53a-133,[7] which states

---

[7] General Statutes § 53a-133 provides: "A person commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of: (1) Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or (2) compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny."

that an individual, in order to commit robbery, must utilize force for the purpose of either (1) preventing or overcoming resistance to the taking of the property or (2) compelling that person to deliver up the property.[8] The state does not dispute that, pursuant to § 53a-133, a person commits robbery when in the course of committing a larceny, that person engages in forcible conduct with a proscribed purpose. *State* v. *Tweedy,* 219 Conn. 489, 498, 594 A.2d 906 (1991). The state concedes that the omission of the statutory language occurred, but argues that the jury was not misled because of the factual background of this case and because of the court's instruction that robbery was a larceny committed by the use of force. The state alternatively argues that if the omission constitutes error, it was harmless beyond a reasonable doubt.[9]

Failure to charge on an essential element of a crime is a constitutional defect. Id., 510–11; *State* v. *Golding,* 213 Conn. 233, 238, 567 A.2d 823 (1989). "It is the state's burden to prove every element of the crime charged beyond a reasonable doubt. . . . A jury's verdict finding an accused guilty of a crime necessarily includes a determination that the state has proven all the elements of that crime beyond a reasonable doubt. . . . Such a verdict cannot be upheld unless the jury had a proper instruction from the court as to the law, which must include an identification of each and every essential element for which

---

[8] The court instructed in pertinent part: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime, he uses or threatens the use of a dangerous instrument. . . .

"Now, if you find that the defendant has committed larceny, you must next determine whether the larceny was accompanied by the use of force. In this instance . . . the force being used would be the use or the threatened use of a dangerous instrument, that would be what makes it robbery in the first degree."

[9] The state conceded during oral argument that any explanation by the court during preliminary instructions at the opening of the trial could not be claimed to substitute for the required final instruction.

the state has the burden of proof beyond a reasonable doubt. Without such a basic instruction, we cannot conclude that the jury acted in a fair manner." (Citations omitted.) *State* v. *Hamilton,* 30 Conn. App. 68, 75–76, 618 A.2d 1372 (1993), aff'd, 228 Conn. 234, 636 A.2d 760 (1994). We agree that the court failed to instruct on an essential element of the crime of robbery as charged.

"We have previously addressed the situation where the trial court gave *no* instruction on an essential element rather than a *defective* instruction. *State* v. *Payne,* 12 Conn. App. 408, 530 A.2d 1110 (1987). We declined, in *Payne,* to apply a harmless error analysis . . . ." (Emphasis in original.) Id., 77. "[The] trial court's failure to instruct on an essential element of an offense is an error to which harmless error analysis does not apply." Id., 78. Therefore, the defendant's conviction of robbery in the first degree may not stand.

## V

The defendant contends finally that the trial court improperly commented on his credibility. He posits that the court "was not evenhanded," and thereby prejudiced the jury in their evaluation of credibility to such an extent as to deny the defendant a fair trial. Specifically, the defendant points to the court's instruction that the jury could consider the defendant's interest in the outcome of the case while making no such comment as to the police officers who testified. Because this claim was not preserved, the defendant seeks review under *Evans-Golding.*[10]

The entire charge discloses that the court's instructions properly directed the jury to consider the credibility of all witnesses. The defendant has not shown

---

[10] See footnote 1.

that his claim is of constitutional magnitude alleging the violation of a fundamental right, and therefore, we decline to review it.

The judgment is reversed with respect to the charge of robbery in the first degree only and the case is remanded for a new trial on that charge.

In this opinion the other judges concurred.

