# STATE OF CONNECTICUT *v.* TIMOTHY JONES
## (13442)

Dupont, C. J., and Lavery and Landau, Js.

Argued May 25—decision released September 26, 1995

*Richard F. Wareing,* special public defender, with whom, on the brief, was *Dwinette E. Johnson,* special public defender, for the appellant (defendant).

*Robert J. Scheinblum,* deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *James G. Clark,* assistant state's attorney, for the appellee (state).

LAVERY, J. The defendant appeals from a judgment of conviction, after a jury trial, of two counts of assault in the first degree in violation of General Statutes § 53a-59 (a) (1) and (3),[1] respectively. The defendant was also convicted of carrying a pistol without a permit in violation of General Statutes § 29-35, but does not challenge that conviction on appeal. The defendant claims that the trial court improperly (1) instructed the jury on the issue of self-defense, and (2) admitted into evidence a photograph of the victim taken immediately before she had undergone surgery.

The jury could have reasonably found the following facts. On February 13, 1992, the defendant was walking down Cedar Street in New Haven armed with a .45 caliber pistol. According to the defendant, he was carrying the pistol because he had heard that several members of the Island Brothers gang, including Boo Battle, were looking for him. As the defendant approached the intersection of Cedar and Spring Streets, he noticed a car pass by him that resembled the car that Battle drove.

---

[1] General Statutes § 53a-59 (a) provides in pertinent part: "A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument; or . . . (3) under circumstances evincing an extreme indifference to human life he recklessly engages in conduct which creates a risk of death to another person, and thereby causes serious physical injury to another person . . . ."

The defendant crossed the intersection and began walking down Spring Street, watching for the car.

As he proceeded down Spring Street, the defendant noticed that the car stopped on the opposite side of the street. Three men got out of the car, one of whom the defendant recognized as Battle. The defendant hid behind a tree, pulled out his pistol and took aim at Battle and his companions.

At that time, the victim, five year old Jasmine Booze, was seated in the front passenger seat of a car driven by her grandmother, Morine Bivens. As the defendant was about to open fire, Bivens' car turned left onto Spring Street. Bivens first noticed Battle and his companions running near a building to the left of her car. As Bivens continued to drive along Spring Street, she then saw the defendant, who was standing next to a tree on the right side of her automobile waving his arm up and down. Bivens did not realize that the defendant was brandishing a pistol until she heard gunfire from the right side of her car where the defendant was located. Bivens testified that no other shots were fired prior to those.

One of the first shots shattered the right front passenger window of Bivens' car and struck the victim's face. The victim fell onto her seat, slumping against Bivens. When Bivens realized that her granddaughter had been hit by a bullet and was bleeding, she sped away from the scene. As she drove away down Spring Street, Bivens heard several gunshots, but was unable to pinpoint the direction from which they were fired. The bullet shattered the victim's jawbone, dislodged several teeth, damaged other teeth and lacerated her right cheek. At trial the defendant presented the affirmative defense of self-defense.

The defendant first raises two issues concerning the trial court's instructions on self-defense under General

Statutes § 53a-19.[2] The defendant claims that the charge
on self-defense contained two misstatements of the law,
namely, on the definition of "initial aggressor" and on
the "duty to retreat," which, when taken individually
or together, could have misled the jury. The defendant
failed either to file a request to charge on self-defense
or promptly to take exception to the charge after it was
delivered. As a threshold matter, we must first decide
whether these issues are properly reviewable by this
court.

This court is not bound to review claims of error in
jury instructions if the party raising the claim neither
submitted a written request to charge nor excepted to

[2] General Statutes § 53a-19 provides: ."(a) Except as provided in subsec-
tions (b) and (c) of this section, a person is justified in using reasonable
physical force upon another person to defend himself or a third person
from what he reasonably believes to be the use or imminent use of physical
force, and he may use such degree of force which he reasonably believes
to be necessary for such purpose; except that deadly physical force may
not be used unless the actor reasonably believes that such other person is
(1) using or about to use deadly physical force, or (2) inflicting or about to
inflict great bodily harm.

"(b) Notwithstanding the provisions of subsection (a) of this section, a
person is not justified in using deadly physical force upon another person
if he knows that he can avoid the necessity of using such force with complete
safety (1) by retreating, except that the actor shall not be required to retreat
if he is in his dwelling, as defined in section 53a-100, or place of work and
was not the initial aggressor, or if he is a peace officer or a private person
assisting such peace officer at his direction, and acting pursuant to section
53a-22, or (2) by surrendering possession of property to a person asserting
a claim of right thereto, or (3) by complying with a demand that he abstain
from performing an act which he is not obliged to perform.

"(c) Notwithstanding the provisions of subsection (a) of this section, a
person is not justified in using physical force when (1) with intent to cause
physical injury or death to another person, he provokes the use of physical
force by such other person, or (2) he is the initial aggressor, except that
his use of physical force upon another person under such circumstances is
justifiable if he withdraws from the encounter and effectively communicates
to such other person his intent to do so, but such other person notwithstand-
ing continues or threatens the use of physical force, or (3) the physical
force involved was the product of a combat by agreement not specifically
authorized by law."

the charge given by the trial court. Practice Book § 852.[3] The defendant, however, seeks review under the standard set forth in *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989), because jury instructions that misstate the statutory defense of self-defense violate a defendant's fourteenth amendment right to establish a defense. See *Washington* v. *Texas*, 388 U.S. 14, 19, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967). Under *State* v. *Golding*, supra, 239–40, a defendant cannot prevail on his unpreserved claims unless (1) the record is adequate to review the alleged claim of error, (2) the claim is of constitutional magnitude, (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a constitutional right, and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt.

We find the record in this case adequate to support review of this claim, which encompasses claims that the trial court's definition of "initial aggressor" was incorrect and that its instruction on the "duty to retreat" was also incorrect. These claims apply to both assault charges of which the defendant was convicted.[4] We agree with the defendant that this claim is of constitutional magnitude because the fundamental right to establish a defense "includes proper jury instructions on the elements of self-defense so that a jury may ascer-

---

[3] Practice Book § 852 provides: "The supreme court shall not be bound to consider error as to the giving of, or the failure to give, an instruction unless the matter is covered by a written request to charge or exception has been taken by the party appealing immediately after the charge is delivered. Counsel taking the exception shall state distinctly the matter objected to and the ground of objection. Upon request, opportunity shall be given to present the exception out of the hearing of the jury."

[4] Self-defense is a valid defense to crimes based on reckless conduct as well as intentional conduct. *State* v. *Hall*, 213 Conn. 579, 586, 569 A.2d 534 (1990); *State* v. *King*, 24 Conn. App. 586, 590–91, 590 A.2d 490, cert. denied, 219 Conn. 912, 593 A.2d 136 (1991).

tain whether the state has met its burden of proving beyond a reasonable doubt that the assault was not justified." *State* v. *Ash*, 231 Conn. 484, 492–93, 651 A.2d 247 (1994); see also *State* v. *Fuller*, 199 Conn. 273, 278, 506 A.2d 556 (1986).

The defendant claims that, in the instruction to the jury on self-defense on both charges of assault in the first degree, the trial court made two misstatements of the law and that it is reasonably possible that the jury was misled. Because the defendant's claim is reviewable we must determine whether the trial court's instructions clearly deprived the defendant of his constitutional right to establish a defense.

In the course of its charge, the trial court instructed the jury that: "A defendant is not justified in using physical force on another person, if he is the initial aggressor, *that is, the first one to use physical force.*" (Emphasis added.) In *State* v. *Jimenez*, 228 Conn. 335, 338–42, 636 A.2d 782 (1994), the Supreme Court found that a jury instruction defined initial aggressor as the first actor to use physical force was an incorrect statement of the law under § 53a-19. "Read according to its plain language, and as a whole, doubtlessly § 53a-19 contemplates that a person may respond with physical force to a reasonably perceived threat of physical force without becoming the initial aggressor and forfeiting the defense of self-defense." Id., 341. Thus, the trial court's instruction defining "initial aggressor" as the first one to use physical force was an incorrect statement of the law.

Because the trial court's instruction defining initial aggressor was incorrect, our next inquiry is whether it was reasonably possible that the incorrect definition misled the jury. *State* v. *Jimenez*, supra, 228 Conn. 341. Where the claimed error is one of constitutional magnitude, we must determine whether, in light of the charge as a whole, it is reasonably possible that the

jury was misled. *State* v. *Utz*, 201 Conn. 190, 196–97, 513 A.2d 1191 (1986). "In determining whether the jury was misled, [i]t is well established that [a] charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but is to be considered rather as to its probable effect upon the jury in guiding them to a correct verdict in the case." (Internal quotation marks omitted.) *State* v. *Ash*, supra, 231 Conn. 493–94. "[T]he test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law." (Internal quotation marks omitted.) *State* v. *Leroy*, 232 Conn. 1, 8, 653 A.2d 161 (1995).

In *State* v. *Brown*, 35 Conn. App. 699, 709–10, 647 A.2d 17, cert. denied, 231 Conn. 932, 649 A.2d 254 (1994), this court found that an identical definition of initial aggressor in a charge was not misleading because all of the evidence clearly demonstrated that the defendant was not the first to use physical force. Although the charge was not accurate when tested by the legal principles stated by our Supreme Court, it was not reasonably possible that the instruction, viewed in its entirety, misled the jury because the question of who was the initial aggressor was not an issue in the case. Conversely, in *State* v. *Jimenez*, supra, 228 Conn. 342, the same instruction was clearly misleading to the jury because it was undisputed that the defendant was the first to use physical force and the definition of initial aggressor was central to the applicability of self-defense.

In this case, the factual issue of whether the defendant was the first to use physical force was left for the jury to decide. The jury could have reasonably found that the defendant was the first to use physical force, but that he was defending himself from what he reasonably believed to be the imminent use of physical force.

These facts are similar to those in *Jimenez* because the definition of initial aggressor, if the jury believed the defendant was the first to use physical force, would be crucial to his defense of self-defense. It is reasonably possible, therefore, that the incorrect instruction misled the jury.

The court also instructed the jury that: "[A] defendant is not justified in using deadly physical force upon another person if he knows that he can avoid the necessity of using such force with complete safety by retreating. The law does not encourage the use of deadly force and in most circumstances a person *must retreat from the perceived harm if they are able to retreat in complete safety*." (Emphasis added.) We conclude that the claim is reviewable and, therefore, we must decide whether the claimed error clearly deprived the defendant of his constitutional right to establish a defense.

The defendant claims that as a result of the trial court's inaccurate charge to the jury on the duty to retreat, it is reasonably possible that the jury was misled. Section 53a-19 provides for the defense of self-defense and sets forth the circumstances justifying the use of physical force. Subsection (a) of § 53a-19 does impose an objective reasonableness requirement, providing in relevant part that "deadly physical force may not be used unless the actor reasonably believes that such other person is (1) using or about to use deadly physical force, or (2) inflicting or about to inflict great bodily harm." Subsection (b) of that statute, which specifically sets out the duty to retreat, however, imposes only a subjective requirement. Subsection (b) of § 53a-19 provides in part that a person is not justified in using deadly physical force "if he knows that he can avoid the necessity of using such force with complete safety (1) by retreating . . . ." "The statute requires *both* that a retreat in complete safety be available *and* that the defendant know of it. 'The self-defense statute, i.e., Gen-

eral Statutes § 53a-19 . . . focuses on the person . . . claiming self-defense. It focuses on what *he* reasonably believes under the circumstances and presents a question of fact [as to whether a safe retreat was available and whether he knew of it]. . . . This statutory emphasis upon the defendant further demonstrates the function of the jury in their evaluation of the self-defense claim.' . . . '[Section] 53a-19 (b) requires recourse to retreat in lieu of the use of physical force only when the actor himself "knows that he can avoid the necessity of using such force with complete safety . . . ." ' " (Citations omitted; emphasis in original.) *State* v. *Quintana*, 209 Conn. 34, 46, 547 A.2d 534 (1988).

In instructing the jury concerning the defendant's duty to retreat, the trial court gave the following charge: "In addition to the three exceptions that I just stated, a defendant is not justified in using deadly physical force upon another if he knows that he can avoid the necessity of using such force with complete safety by retreating. The law does not encourage the use of deadly force and in most circumstances a person must retreat from their perceived harm *if they are able* to retreat with complete safety." (Emphasis added.) These words incorrectly suggested that the statute permitted the jury to measure the defendant's knowledge of his ability to retreat according to an objective standard of reasonableness rather than the subjective standard of the defendant's actual knowledge. See *State* v. *Quintana*, supra, 209 Conn. 46. The parties do not dispute the fact that the jury was charged in this manner. "The parties do disagree, however, about whether these statements, when viewed in the light of the trial court's other instructions regarding the duty to retreat and the charge as a whole, and viewed in the context of the contested facts of the case, made it reasonably possible that the jury was misled." *State* v. *Ash*, supra, 231 Conn. 495.

The state argues that the trial court's misstatements were harmless beyond a reasonable doubt because they were preceded and followed by correct statements of law. The state proposes that the trial court's improper references to an objective standard were cured by the remainder of the charge on the duty to retreat. We disagree. In accordance with *State* v. *Ash*, supra, 231 Conn. 496, we conclude that the trial court's subsequent use of the proper standard, "at best, further muddied the jury's understanding of the proper subjective standard and, at worst, suggested to the jury that it could reject the defendant's claim of self-defense" if it found that he was able "but did not actually know that he could have avoided using deadly physical force in complete safety by retreating." Id.

The state further argues that the trial court's improper charge concerning the duty to retreat was harmless beyond a reasonable doubt, relying on *State* v. *Quintana*, supra, 209 Conn. 34, which held that the trial court's improper injection of an objective standard into its instructions on the defendant's duty to retreat under the self-defense statute was harmless beyond a reasonable doubt because " '[t]he principal factual issues . . . were not classically dependent upon [the subtleties of the law of self-defense] for their proof, as is true in cases where the principal factual issue is the . . . [defendant's subjective knowledge of the availability of safe escape].' " Id., 47–48.

The case at hand is distinguishable from *Quintana* and is similar to *Ash*, in that the present case "hinge[s] substantially on whether the defendant, at some point either prior to or during the fatal altercation, failed to retreat within the meaning of the self-defense statute." *State* v. *Ash*, supra, 231 Conn. 498. In *State* v. *Quintana*, supra, 209 Conn. 47–48, the jury convicted the defendant of felony murder after being presented with two different theories on why the defendant stabbed the

victim. The defendant's witness had testified that the defendant had stabbed the victim in self-defense to thwart the victim's unprovoked attack. Id., 47. Another witness contradicted this testimony, claiming that the defendant had stated that he used the knife while robbing the victim. Id. The Supreme Court concluded that "[t]he jury's verdict can fairly be read to indicate a choice between these two inconsistent versions of the stabbing . . . ." Id. Because the principal factual issues of the present case are dependent on the law of self-defense, *Quintana* is not dispositive of the present case.

The facts presented at trial raised a significant question about whether the defendant subjectively knew he could avoid the use of force with complete safety by retreating. The trial court's charge on this question, which instructed the jury that if it found the defendant could objectively have effected his retreat in complete safety as soon as Battle's confederate opened fire, precluded the defendant from claiming self-defense. We conclude that it was reasonably possible that the trial court's instructions could have misled the jury by barring it from considering the crucial factor of whether the defendant subjectively knew he could retreat in complete safety when Battle's confederate started shooting. In addition, we conclude when the charge on self-defense is taken as a whole in light of the facts of this case, the misstatement of the law on initial aggressor and the duty to retreat make it reasonably possible that the jury was misled.

The defendant's final claim is that the trial court improperly admitted into evidence a photograph of the victim's gunshot wounds taken prior to reconstructive surgery.[5] We disagree.

"The trial court exercises a broad discretion in admitting such evidence, and its determination will not be

---

[5] We review this claim because it may recur on retrial.

disturbed on appeal unless a clear abuse of that discretion is shown. *State* v. *Piskorski*, 177 Conn. 677, 700–701, 419 A.2d 866, cert. denied, 444 U.S. 935, 100 S. Ct. 283, 62 L. Ed. 2d 194 (1979); *State* v. *Smith*, [174 Conn. 118, 123, 384 A.2d 347 (1977)]." *State* v. *Bember*, 183 Conn. 394, 408, 439 A.2d 387 (1981). "The great weight of authority is that photographs, even though gruesome, are admissible in evidence when otherwise properly admitted if they have a reasonable tendency to prove or disprove a material fact in issue or shed some light on some material inquiry. Note, 73 A.L.R.2d 769, 787. A photograph, the tendency of which may be to prejudice the jury, may be admitted in evidence if, in the sound discretion of the court, its value as evidence outweighs its possible prejudicial effect." (Internal quotation marks omitted.) *State* v. *DeJesus*, 194 Conn. 376, 381, 481 A.2d 1277 (1984); *State* v. *Bember*, supra, 407. The test for determining the admissibility of challenged evidence is not whether the potentially inflammatory photographic evidence is essential to the prosecution's case, but rather whether it is relevant to the prosecution's case. *State* v. *DeJesus*, supra, 381. Upon an objection from the defendant, the prosecution must show that the photographic evidence offered is relevant. Id., 382. We conclude that the trial court's ruling that the photograph was relevant as to whether the victim sustained a serious physical injury and that its probative value on that issue outweighed any possible prejudicial effect was not an abuse of discretion. The defendant's claim, therefore, that the photograph should not have been admitted, fails.

The judgment is reversed as to the conviction of two counts of assault in the first degree and the case is remanded for a new trial.

In this opinion LANDAU, J., concurred.

DUPONT, C. J., dissenting. I respectfully dissent from the majority's conclusion that the defendant is entitled

to a new trial because I do not believe it is reasonably possible that the trial court's instruction misled the jury.[1]

An instruction is harmless beyond a reasonable doubt if there is no reasonable possibility the jury could have been misled. *State* v. *Ash*, 231 Conn. 484, 493 n.5, 651 A.2d 247 (1994). I agree that the defendant's claim is reviewable under the precepts of *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989), because there is an adequate record to review the claim and because the claim is of constitutional magnitude. *State* v. *Walker*, 33 Conn. App. 763, 769, 638 A.2d 1084, cert. denied, 229 Conn. 913, 642 A.2d 1209 (1994). An improper instruction as to an element of a defense is a constitutional deprivation. *State* v. *Ash*, supra, 493. I do not agree, however, that the state has failed to demonstrate the harmlessness of the alleged instruction, and conclude, therefore, that the defendant cannot prevail on this claim.

"[T]he question of harmlessness of a jury instruction is properly gauged by reference to both the language of the entire charge and the evidence in the case . . . ." (Citation omitted.) Id., 496. In this case, the defendant claims that the charge was flawed because it was a misstatement of two aspects of self-defense, the definition of initial aggressor, and the duty to retreat. These aspects of self-defense are related and should be considered together in evaluating whether the statements, in light of the charge as a whole, including all of the instructions given on self-defense, were misleading.

The defendant claims that the jury was misled as to the defendant's duty to retreat, and isolates one portion of one sentence of the charge to prove his claim. He

---

[1] I agree with the majority's conclusion that it was not improper to admit the victim's photograph into evidence.

complains that the court improperly instructed the jury that "in most circumstances, a person must retreat from the perceived harm, if they are able to retreat with complete safety." He claims that this is the improper use of an objective rather than a subjective standard.

The majority relies on *State* v. *Ash*, supra, 231 Conn. 484, in determining that the charge to the jury on self-defense was improper. The instruction in this case, however, differs from that given in *Ash*. In *Ash*, the only colorable subjective test employed in the charge was whether the defendant "could perceive" that physical force could be avoided. The Supreme Court found those words to be insufficient to allow the jury to evaluate the defendant's claim of self-defense properly. In the present case, the trial court made numerous references to the situation from the subjective point of view of the defendant. The court stated that the defendant's belief of the situation was to be tested by what a "reasonable person" would have believed "under the circumstances from the perspective of the defendant" and that "the danger or apparent danger claimed by the defendant *is to be determined from his standpoint at the time of the incident* considering all the existing circumstances. The act leading to the defendant's claim of self-defense need not be an actual threat or assault but only some act that a reasonable person *seeing it from the defendant's perspective* would reasonably believe to be an assault or threat." (Emphasis added.) The court further stated that "a defendant is not justified in using deadly physical force upon another person if *he knows* that he can avoid the necessity of using such force with complete safety by retreating." (Emphasis added.) The court's emphasis throughout its charge was on the subjective test, and I would not reverse the conviction on the ground that the jury was misled by the charge on the duty to retreat.

The defendant also claims that the jury was misled by one sentence of the charge that improperly instructed the jury that the "defendant is not justified in using physical force on another person if he is the initial aggressor, that is, the first person to use physical force." It was improper because the first person to use physical force is not necessarily, but may be, the initial aggressor within the meaning of General Statutes § 53a-19 (c). *State* v. *Jimenez*, 228 Conn. 335, 342–43, 636 A.2d 782 (1994); *State* v. *Brown*, 35 Conn. App. 699, 709, 647 A.2d 17, cert. denied, 231 Conn. 932, 649 A.2d 254 (1994). Although the statement quoted previously was incorrect, it is not reasonably possible that it misled the jury. After the statement, the court then twice instructed the jury "that a person is justified in using reasonable physical force upon another person to defend himself from what he reasonably believes to be the use or imminent use of physical force and he may use such degree of force which he reasonably believes to be necessary for that purpose." The words "use" or "imminent use" of physical force as employed in the instruction make it clear that the defendant could either believe that he needed to use force where none had yet been employed against him or that he needed to use force because force had already been used against him, and still be entitled to the defense of self-defense. The court thus clarified that being the first to use physical force is not the paramount factor in the determination of who was the initial aggressor. Instead, the paramount factor is whether the use of physical force by the defendant was reasonable regardless of which person struck the initial blow.

In *State* v. *Jimenez*, supra, 228 Conn. 338, the court specifically instructed the jury that if it found that the defendant was the first to use physical force, then the state would have disproved the defense of self-defense. In *Jimenez*, the undisputed facts showed that defendant

was the first to use physical force and the defendant himself testified that he was the first to use physical force. Upon review of the claim, which had been preserved, the Supreme Court held that a new trial was necessary because the instruction specifically told the jury not to consider the defendant's claim of self-defense if the jury concluded, in accordance with the undisputed facts, that the defendant was the first to use physical force. Id., 340.

In the present case, the court did not instruct the jury that if it found that the defendant was the first to use physical force, then the state would have disproved the defense of self-defense. The court left it to the jury to decide if the defendant was the initial aggressor. Also, it was not undisputed that the defendant was the first to shoot. In fact, the defendant's statement was that someone shot at him without provocation and that it was only then that he returned a shot. I would not conclude, therefore, that *Jimenez* applies and would not conclude that the instruction as to initial aggressor, when read as a whole, misled the jury.

Reviewing the charge as a whole, I believe there is no reasonable possibility that the jury was misled and I would uphold the convictions.[2]

---

[2] The majority does not discuss and the parties have not raised the issue of whether the defendant could be convicted of both General Statutes § 53a-59 (a) (1) and (3), respectively. Because the statutory definition of intentional and reckless are mutually exclusive and inconsistent, a defendant usually cannot be guilty of two crimes arising out of the same act that require such mutually exclusive states of mind as essential elements. *State* v. *King*, 216 Conn. 585, 594, 583 A.2d 896, on appeal after remand, 218 Conn. 747, 591 A.2d 813 (1990).

Although the defendant was convicted of violating § 53a-59 (a) under both subdivision (1), a crime requiring intent, and subdivision (3), a crime requiring an extreme indifference to human life and recklessness, both convictions should be upheld because the jury could find that the defendant intended to cause serious physical injury to Boo Battle, while simultaneously engaging in reckless conduct by shooting into a public street. See *State* v. *Hinton*, 227 Conn. 301, 314, 630 A.2d 593 (1993).