STATE OF CONNECTICUT *v.*
RONALD M. SINGLETON
(SC 17795)

Norcott, Katz, Palmer, Vertefeuille and Zarella, Js.

Argued October 17, 2008—officially released July 28, 2009

*Toni M. Smith-Rosario,* senior assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *James G. Clark,* senior assistant state's attorney, for the appellant (state).

*Kent Drager,* senior assistant public defender, for the appellee (defendant).

*Opinion*

ZARELLA, J. The state appeals, on the granting of certification, from the judgment of the Appellate Court reversing the conviction of the defendant, Ronald M. Singleton, of manslaughter in the first degree.[1] The Appellate Court concluded that the trial court failed to instruct the jury properly on self-defense by removing from its consideration the disputed factual issue of

[1] The defendant was charged with murder under General Statutes § 53a-54 (a), but the trial court also instructed the jury on the lesser included offense of manslaughter in the first degree under General Statutes § 53a-55 (a), of which the defendant was found guilty.

General Statutes § 53a-54a provides in relevant part: "(a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person . . . ."

General Statutes § 53a-55 provides in relevant part: "(a) A person is guilty of manslaughter in the first degree when: (1) With intent to cause serious physical injury to another person, he causes the death of such person . . . ."

whether the defendant had used deadly or nondeadly physical force during an altercation with the victim, Leonard Cobbs, that resulted in the victim's death. *State v. Singleton*, 97 Conn. App. 679, 687, 905 A.2d 725 (2006). On appeal to this court, the state claims that the trial court correctly instructed that the defendant had used deadly physical force in defending himself against the victim because his claim of self-defense required a jury determination as to whether he was justified in killing the victim with a knife, thus making his theoretical use of nondeadly force during the preceding struggle irrelevant. The defendant responds that the instructions were improper because the use of deadly or nondeadly physical force during the struggle was a disputed factual issue for the jury to decide. The defendant alternatively[2] contends that the trial court improperly instructed the jury on the "initial aggressor" exception to the law of self-defense and on the offense of manslaughter in the first degree. We agree with the state that the court's instructions on self-defense were proper and reject the defendant's alternative grounds for affirmance. Accordingly, we reverse the judgment of the Appellate Court.

The following facts, which the jury reasonably could have found, are set forth in the opinion of the Appellate Court. "The defendant and the victim . . . had used illegal drugs together. The victim purchased these drugs with the defendant's money. The defendant was angry that the victim had failed to reimburse him for his share of the drugs. On December 18, 2002, the defendant attempted to find the victim to collect this debt and traveled to both West Haven and New Haven in order to locate him. He eventually found the victim in the Newhall area of West Haven.

---

[2] Practice Book § 84-11 provides in relevant part: "(a) Upon the granting of certification, the appellee may present for review alternative grounds upon which the judgment may be affirmed provided those grounds were raised and briefed in the appellate court. . . ." In this case, the defendant briefed the relevant issues in the Appellate Court. Accordingly, they are properly before this court.

"The two men spoke, and the defendant demanded that the victim pay him. The victim indicated that he did not have the money. The victim agreed to go to the defendant's apartment later that day to repay his debt of $180. After arriving at the apartment, the victim again informed the defendant that he did not have the money but offered to perform oral sex as an alternative means to settle the debt. The defendant rejected this proposal and became angry. The defendant then threatened the victim by stating: 'Yo, I'll fuck you up.' At approximately 6:45 p.m., a physical altercation between the two men commenced. The victim and the defendant moved around the room while engaged in this physical altercation. During this encounter, the defendant stabbed the victim several times with both a knife and a screwdriver.[3] The stab wound that caused the victim's death was seven and one-half inches deep, running from left to right, and was caused by a downward strike.[4] This wound penetrated the chest wall, a portion of the left lung, the pericardium and the heart, and the diaphragm, terminating in the liver. The length, depth and size of the wound all were consistent with having been caused by the knife blade.

"The defendant did not call the police or paramedics immediately but, instead, disposed of the knife blade, which had broken off from the handle, and attempted to clean up the apartment. More than thirty minutes after the altercation had ended, at approximately 7:22 p.m., the defendant called his girlfriend, Victoria Salas. After arriving at the apartment, Salas attempted to revive the victim and called 911. At approximately 8:51

---

[3] "The victim had three puncture wounds on the back of his head that appeared to have been caused by the screwdriver. The victim also had a nonfatal stab wound on his back." *State* v. *Singleton*, supra, 97 Conn. App. 681 n.3.

[4] "[The] state medical examiner . . . testified that the victim could not have survived more than ten minutes after receiving this wound." *State* v. *Singleton*, supra, 97 Conn. App. 681 n.4.

p.m., the defendant, using Salas' cellular telephone, called the building maintenance supervisor, Richard McCann. McCann helped the defendant retrieve the knife blade that he had thrown down the garbage chute. At 9:06 p.m., Salas telephoned the police department, and officers arrived more than two hours after the fight. The officers discovered blood throughout the defendant's apartment. The knife had the victim's blood on it. The screwdriver had DNA from the victim on the handle, blood from the defendant on the shaft, and a mixture of blood on the tip with the defendant's DNA as the major contributor. One of the detectives observed that the defendant was bleeding from the middle of his chest and that there was a bloodstain on his shirt approximately the size of a fifty cent piece. This wound later was determined to have been caused by the screwdriver.[5]

"The defendant raised the issue of self-defense at trial. The defense was premised on the defendant's version of the fight. The defendant testified that after he had asked the victim to repay him in the apartment, the victim became verbally aggressive and pulled out the screwdriver and threatened him. The victim then stabbed the defendant in the chest, and a struggle ensued. The defendant managed to disarm the victim, and they continued to struggle. Eventually, the victim grabbed the knife. The defendant managed to grab the victim's wrists, and, at some point, the knife went into the victim's body, ending the struggle."[6] *State* v. *Singleton,* supra, 97 Conn. App. 680–82.

---

[5] "The state argued that the wound was self-inflicted to support a claim of self-defense. In the alternative, the state contended that even if the victim had stabbed the defendant with the screwdriver, the forensic evidence indicated that this had occurred after the defendant had stabbed the victim." *State* v. *Singleton,* supra, 97 Conn. App. 682 n.5.

[6] In his testimony at trial, the defendant denied any intent to stab the victim and claimed that he was uncertain how and exactly at what point the wound was inflicted.

Both parties requested jury instructions on self-defense. In the state's request to charge, it proposed instructions referring to "deadly physical force" that were based on language in General Statutes § 53a-19 (a)[7] and the instructions given in *State* v. *Clark*, 264 Conn. 723, 732, 826 A.2d 128 (2003), *State* v. *Prioleau*, 235 Conn. 274, 286–87, 664 A.2d 743 (1995), and *State* v. *Skelly*, 78 Conn. App. 513, 516–17, 827 A.2d 759, cert. denied, 266 Conn. 910, 832 A.2d 74 (2003), in which the victims had been fatally shot or stabbed.[8] The defendant proposed instructions that did not refer to "deadly physical force" but, rather, to "reasonable physical force"

---

[7] General Statutes § 53a-19 (a) provides in relevant part: "[A] person is justified in using reasonable physical force upon another person to defend himself . . . from what he reasonably believes to be the use or imminent use of physical force, and he may use such degree of force which he reasonably believes to be necessary for such purpose; except that deadly physical force may not be used unless the actor reasonably believes that such other person is (1) using or about to use deadly physical force, or (2) inflicting or about to inflict great bodily harm."

[8] The state proposed the following instructions based on General Statutes § 53a-19: "The defendant claims that his use of deadly physical force was justified as self-defense. Now, that requires that I explain to you the applicable rules of law on the use of force in self-defense. Self-defense is a legal defense to the use of force which otherwise would be criminal.

"A person is justified in using reasonable physical force upon another person to defend himself from what he reasonably believes to be the use or imminent use of physical force [by another]. He may use such degree of force which he reasonably believes to be necessary for such purpose. He may only use deadly physical force if he reasonably believes that the other person is (1) using or about to use deadly physical force, or (2) inflicting or about to inflict great bodily harm.

"A person is not justified in using physical force, however, when (1) with intent to cause physical injury or death to another person, he provokes the use of physical force by the other person, or (2) he is the initial aggressor . . . [unless] he has withdrawn from the initial encounter and communicated that withdrawal to the other person, who then continues or threatens the further use of physical force." (Internal quotation marks omitted.)

The state also proposed instructions on self-defense that included the subjective-objective test for determining whether the defendant had a reasonable belief that he had to use deadly force to repel the victim's attack, and the state's burden of proof with respect to the defendant's theory of self-defense.

and the use of "a dangerous instrumentality . . . ."[9]
The trial court followed the state's approach and
instructed the jury to consider whether the defendant's
use of "deadly physical force" was justified under a
theory of self-defense.[10] It did not instruct on the use

[9] The defendant's request to charge included the following proposed
instructions: "A person is justified in the use of reasonable physical force
upon someone when he reasonably believes that such force is necessary to
[protect] another from use, or impending use, of physical force by
another. . . .

"You must find the [d]efendant not guilty on the grounds of justification
unless you find that the state has proven to you, beyond [a] reasonable
doubt, any one of the following elements: [f]irst, that the [d]efendant did
not believe that he was in imminent danger of injury by another, and that
the use of force was not necessary to protect himself; or that the [d]efendant
did not have reasonable grounds for that kind of a belief; or that the force
he used was unreasonable; or . . . that he was the initial aggressor. If the
state has proven any one or more of those elements beyond a reasonable
doubt, then the [d]efendant was not justified. Otherwise, he was justified.
* * *

"A [d]efendant claiming justification of self-defense of others is permitted
to use a dangerous instrumentality in two broad circumstances. He may
justifiably use a dangerous instrumentality only if he reasonably believed
that the other person was either using, or about to use, a dangerous instru-
mentality, or inflicting, or about to inflict, great bodily harm. Our statutes
define dangerous instrumentality force as physical force that can be reason-
ably anticipated or expected to cause serious physical injury. Great bodily
harm has been defined as physical damage to the body, which is remarkable
in magnitude or in degree.
* * *

"The degree of force used must be reasonable, but dangerous instrumental-
ity may be used to counter a perceived dangerous instrumentality." (Cita-
tion omitted.)

[10] The trial court instructed the jury as follows: "Justification is the legal
term for self-defense. Whenever I use the words justified or justification, I
am referring to the concept of self-defense.

"Self-defense is a means by which the law justifies the use of force that
would otherwise be illegal. Once self-defense is raised, the state must dis-
prove the [defense] beyond a reasonable doubt.

"The defendant claims [that] he acted in self-defense. In claiming that he
acted in self-defense, the defendant is claiming that his use of deadly physical
force was justified.

" 'Deadly physical force' means physical force which can be reasonably
expected to cause death or serious physical injury. 'Physical injury' means
impairment of physical condition or pain. 'Serious physical injury' means

## of nondeadly physical force, nor did it instruct that the

physical injury which creates a substantial risk of death, or which causes serious disfigurement, serious impairment of health or serious loss or impairment of any bodily organ.

"Although the defendant raised the defense of justification, the state has the burden to prove beyond a reasonable doubt that the defendant was not justified in using deadly physical force.

"There are two circumstances under which a person is not justified in using deadly physical force. If the state proves beyond a reasonable doubt any one of these circumstances, you shall find that the defendant was not justified in using deadly physical force.

"Under the first circumstance, a person is not justified in using deadly physical force when, at the time he uses deadly physical force, he does not reasonably believe [that] the other person is about to use deadly physical force against him or about to inflict great bodily harm to him.

"In deciding whether or not the state has proved beyond a reasonable doubt that the defendant was not justified in using deadly physical force, you will first focus on the defendant. You first focus on what he, in fact, believed at the time he used deadly physical force. Then you focus on whether the defendant's belief was reasonable under all the circumstances that existed when he used deadly physical force.

"Self-defense requires the jury to measure the justifiability of the defendant's actions based on what the defendant reasonably believed under the circumstances presented in this case and on the basis of what the defendant reasonably perceived the circumstances to be.

"The defendant's belief must have been reasonable and not irrational or unreasonable under the circumstances; that is, would a reasonable person in the defendant's circumstances have reached that belief? It is both a question of what his belief was and whether or not it was reasonable.

"The act of [the victim] leading to the defendant's use of deadly physical force need not be an actual threat or assault. The test is not what the other person actually intended but whether the other person's act caused the defendant to reasonably believe was his intention. In other words, the danger need not have been actual or real.

"In judging the danger to himself, however, the defendant is not required to act with infallible judgment. Ordinarily, one exercising the right of self-defense is required to act instantly and without time to deliberate and investigate. Under such circumstances, it is often impossible to make an actual threat when none, in fact, existed. However, the defendant's belief of danger must be reasonable, honest and sincere. Apparent danger with the knowledge that no real danger exists is not an excuse for using any force.

"If you find [that] the state has proved beyond a reasonable doubt that the defendant did not, in fact, believe [that the victim] was using or about to use deadly physical force against him or was inflicting or about to inflict grave bodily harm to him, the defendant's self-defense claim must fail. If, however, you find that the defendant, in fact, believed that [the victim] was

## jury was required to decide the degree of force that the

using or about to use deadly physical force or was inflicting or about to inflict great bodily harm, you must then decide whether that belief held by the defendant was reasonable under the circumstances. That is, would a reasonable person in the defendant's circumstances have reached that belief?

"If you find that the defendant's belief was reasonable from the perspective of a reasonable person in the defendant's circumstances, you must then decide whether the defendant reasonably believed that deadly physical force as opposed to a lesser degree of force was necessary to repel such attack.

"Determining the defendant's belief regarding the necessary degree of force requires that you, again, make two determinations. First, you must decide whether, on the basis of all the evidence presented . . . the defendant, in fact, believed that he needed to use deadly physical force as opposed to some lesser degree of force in order to repel the attack. If you decide [that] the defendant did not, in fact, believe [that] he needed to use deadly physical force to repel the attack, your inquiry ends, and the defendant's self-defense claim must fail. If, however, you find [that] the defendant, in fact, did believe that the use of deadly physical force was necessary, you must then decide whether that belief was reasonable under the circumstances; that is, would a reasonable person in the defendant's circumstances have reached that belief?

"Under the second circumstance, a person is not justified in using deadly physical force if he is the initial aggressor and does not withdraw from the encounter. The initial aggressor is the person who first acts in such a manner that creates a reasonable belief in another person's mind that physical force is about to be used upon that other person. The first person to use physical force is not necessarily the initial aggressor.

"Before an initial aggressor can use any physical force, the initial aggressor must withdraw or abandon the conflict in such a way that the fact of withdrawal is perceived by his opponent so that opponent is aware that there is no longer any danger from the original aggression.

"If you find [that] the state has proved beyond a reasonable doubt that the defendant was the initial aggressor and [that] the defendant did not effectively withdraw from the encounter or abandon it in such a way that [the victim] knew he was no longer in any danger from the defendant, you shall then find [that] the defendant was not justified in using deadly physical force.

"Bearing in mind the instructions [that] I have given you regarding justification, the state has the burden to prove beyond a reasonable doubt under the first circumstance [that], one, the defendant did not, in fact, believe that he was in imminent danger of death or great bodily harm; or, two, the defendant did not have a reasonable basis for his belief; or, three, the defendant did not, in fact, believe he needed to use deadly physical force to repel the attack; or, four, the defendant did not have a reasonable basis for his belief that he needed to use deadly physical force to repel the attack.

defendant had used. The jury subsequently rejected the defendant's claim of self-defense and found him guilty of the lesser included offense of manslaughter in the first degree. Thereafter, the court rendered judgment, sentencing the defendant to a term of twenty years incarceration.

On appeal to the Appellate Court, the defendant claimed that the trial court's instructions were improper because the trial court had failed to submit to the jury the factual question of whether the defendant had used deadly or nondeadly force during his struggle with the victim prior to the stabbing. *State* v. *Singleton*, supra, 97 Conn. App. 687. The Appellate Court agreed, concluding that "[t]he defendant testified that he [had] grabbed the victim's wrists and that during this physical encounter, the knife ended up wounding the victim. We cannot conclude, as a matter of law, that such actions constituted deadly physical force. The defendant was entitled to have the jury, rather than the court, make that factual determination. . . . Simply put, the jury did not have the opportunity to consider the factual issue of whether the defendant used deadly or nondeadly physical force." (Citation omitted.) Id., 696. The Appellate Court further observed that, "[h]ad the jury been instructed to determine whether the defendant used nondeadly force, it could have found that the defendant's grabbing of the victim's wrists and the ensuing struggle constituted an appropriate level of force to repel the victim. The option never was afforded to the defendant. . . . [T]he improper instructions [thus] prejudiced the defendant by making it easier for the state to disprove the claim of self-defense." Id., 697. The Appellate Court also concluded that the evidence was not "so overwhelming as

"Or under the second circumstance . . . [that] the defendant was the initial aggressor, and [that] the defendant did not effectively withdraw from the encounter or effectively abandon it so that [the victim] was aware that there was no longer any danger to him."

to render the improper instruction[s] harmless" and ordered a new trial. Id., 698. This appeal followed.

I

The state claims that the Appellate Court improperly reversed the defendant's conviction on the ground that the jury should have been instructed to consider the issue of nondeadly force. The state contends that there was no dispute that the defendant inflicted the fatal stab wound with the knife and that, once the jury determined that he had done so intentionally, all that was left to decide regarding his claim of self-defense was whether his actions were justified, thereby rendering irrelevant the issue of whether he had used deadly or nondeadly force during the struggle that preceded the stabbing. The defendant responds that the only intentional force he used was when he fought with the victim over the knife and that the actual stabbing was an unintended consequence of the altercation. Accordingly, he argues that the jury, in considering his claim of self-defense, was required to resolve the factual question of whether he used deadly or nondeadly force during the struggle. The defendant contends that the resolution of this factual question was crucial because it affected the state's burden of disproving his claim of self-defense by making it easier to refute a claim of self-defense predicated on the use of deadly rather than nondeadly force. We agree with the state.

We begin our analysis with the standard of review. "A fundamental element of due process is the right of a defendant charged with a crime to establish a defense. . . . *State* v. *Adams*, 225 Conn. 270, 283, 623 A.2d 42 (1993). An improper instruction on a defense, like an improper instruction on an element of an offense, is of constitutional dimension. . . . [T]he standard of review to be applied to the defendant's constitutional claim is whether it is reasonably possible that the jury

was misled. . . . In determining whether the jury was misled, [i]t is well established that [a] charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect [on] the jury in guiding [it] to a correct verdict in the case. . . . The test to be applied to any part of a charge is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result. . . . *State* v. *Clark*, [supra, 264 Conn. 729–30]; see also *State* v. *Prioleau*, [supra, 235 Conn. 284]; *State* v. *Jimenez*, 228 Conn. 335, 339, 636 A.2d 782 (1994). . . . In reviewing the trial court's failure to charge as requested, we must adopt the version of facts most favorable to the defendant which the evidence would reasonably support. . . . *State* v. *Miller*, 55 Conn. App. 298, 302, 739 A.2d 1264 (1999), cert. denied, 252 Conn. 923, 747 A.2d 519 (2000); *State* v. *Harrison*, 32 Conn. App. 687, 690, 631 A.2d 324, cert. denied, 227 Conn. 932, 632 A.2d 708 (1993)." (Citation omitted; internal quotation marks omitted.) *State* v. *Singleton*, supra, 97 Conn. App. 688–89. "A challenge to the validity of jury instructions presents a question of law over which [we have] plenary review." (Internal quotation marks omitted.) *Mann* v. *Regan*, 108 Conn. App. 566, 576, 948 A.2d 1075 (2008).

General Statutes § 53a-19 (a) provides in relevant part: "[A] person is justified in using reasonable physical force upon another person to defend himself . . . from what he reasonably believes to be the use or imminent use of physical force, and he may use such degree of force which he reasonably believes to be necessary for such purpose; except that deadly physical force may not be used unless the actor reasonably believes that such other person is (1) using or about to use deadly physical force, or (2) inflicting or about to inflict great bodily harm."

"Under our Penal Code, self-defense . . . is a defense . . . rather than an affirmative defense. . . . Consequently, a defendant has no burden of persuasion for a claim of self-defense; he has only a burden of production. That is, he merely is required to introduce sufficient evidence to warrant presenting his claim of self-defense to the jury. . . . Once the defendant has done so, it becomes the state's burden to disprove the defense beyond a reasonable doubt. . . . Accordingly, [u]pon a valid claim of self-defense, a defendant is entitled to proper jury instructions on the elements of self-defense so that the jury may ascertain whether the state has met its burden of proving beyond a reasonable doubt that the assault was not justified. . . . As these principles indicate, therefore, only the state has a burden of persuasion regarding a self-defense claim . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Clark*, supra, 264 Conn. 730–31.

"Our statutes distinguish between deadly and non-deadly force used in self-defense. See General Statutes § 53a-19. Additionally, [this court] has recognized that when instructing a jury on self-defense under § 53a-19, there is a distinction between deadly and nondeadly force. See, e.g., *State* v. *Whitford*, 260 Conn. 610, 631–32, 799 A.2d 1034 (2002); see also J. Pellegrino, Connecticut Selected Jury Instructions: Criminal (3d Ed. 2001) §§ [2.39 through 2.40], pp. 110–23. The state may defeat a defendant's claim of self-defense involving deadly physical force by proving, beyond a reasonable doubt, any of the following: (1) the defendant did not reasonably believe that the victim was using or about to use deadly physical force or inflicting or about to inflict great bodily harm; or (2) the defendant knew that he could avoid the necessity of using deadly physical force with complete safety by retreating,[11] or surrendering

---

[11] "Retreat is not required if the defendant is in his or her dwelling, or in his or her place of work, and was not the initial aggressor, or is a peace officer or assisting a peace officer in the performance of the officer's duties.

possession of property to a person asserting a claim of right or by complying with a demand that he . . . abstain from performing an act that he is not obligated to perform. See General Statutes § 53a-19. In other words, the General Assembly has created specific legislation that limits the use of deadly physical force in the context of self-defense when compared to the use of reasonable physical force. If the state can carry its burden of proof with respect to any of the enumerated situations . . . the defendant's claim of self-defense [involving the use of] deadly physical force will fail. In contrast, the right to use reasonable physical force is, by legislative fiat, much broader in scope. In order to defeat a claim of self-defense [involving] the use of reasonable physical force, the state must prove beyond a reasonable doubt that the defendant did not reasonably believe that he or she was subject to the use or imminent use of physical force and did not use a degree of force that was reasonable for that purpose. Simply put, it is much easier for the state to disprove [a claim of] self-defense when [it is predicated on the use of] deadly physical force . . . ." *State* v. *Singleton,* supra, 97 Conn. App. 692–93.

Before addressing the merits, we note that a claim of self-defense is a justification defense. "A justification defense represents a legal acknowledgment that the harm caused by otherwise criminal conduct is, under special justifying circumstances, outweighed by the need to avoid an even greater harm or to further a greater societal interest. 1 P. Robinson, Criminal Law Defenses (1984) § 24 (a), p. 83. [Thus], in the case of self-defense, [s]ociety's interest in the right to bodily integrity, when combined with the physical harm threatened [by an aggressor], outweighs the normal prohibition against the physical injury needed to deter such

See General Statutes § 53a-19 (b)." *State* v. *Singleton,* supra, 97 Conn. App. 693 n.14.

an aggressor. Id., p. 84. All justification defenses share a similar internal structure: special triggering circumstances permit a necessary and proportional response . . . . Id., § 24 (b), p. 86. In Connecticut, self-defense is a justification for engaging in *otherwise criminal conduct*. See General Statutes § 53a-19; see also P. Robinson, 'Criminal Law Defenses: A Systematic Analysis,' 82 Colum. L. Rev. 199, 236 (1982) ([i]n most modern codifications, self-defense is appropriately treated . . . as a pure justification).

"Justified conduct is subject to neither condemnation nor punishment because it does not, under the circumstances, violate the prohibition of the law, and indeed may be desired and encouraged. P. Robinson, supra, 82 Colum. L. Rev. 245. Thus, conduct that is found to be justified is, under the circumstances, not criminal. See *State* v. *Yanz*, 74 Conn. 177, 186, 50 A. 37 (1901) (*Hamersley, J.*, dissenting) (killing in self-defense is not a crime); *State* v. *Scheele*, 57 Conn. 307, 314, 18 A. 256 (1889) (reasonable exercise of the right [of self-defense is] justifiable and not a crime at all); *Morris* v. *Platt*, 32 Conn. 75, 83 (1864) (no man is liable in a civil suit or criminal prosecution for an injury lawfully committed in self-defense upon an actual assailant); see also *Thomas* v. *Leeke*, 725 F.2d 246, 249–50 n.2 (4th Cir.) (Rooted in the Anglo-American tradition is the belief that a killing in self-defense is not a crime. . . . [I]t is elementary and fundamental to our jurisprudence that killing or wounding in self-defense is simply no crime at all . . . .), cert. denied, 469 U.S. 870, 105 S. Ct. 218, 83 L. Ed. 2d 148 (1984); Conn. Gen. Stat. Ann. § 53a-16 (West 2001), comment of the commission to revise the criminal statutes (self-defense statute state[s] [a rule] of law under which the use of force is justified and thus not criminal)." (Emphasis added; internal quotation marks omitted.) *State* v. *Montanez*, 277 Conn. 735, 752–53, 894 A.2d 928 (2006).

Mindful of these principles, we agree with the state that the trial court's instructions on self-defense were not improper under the circumstances of this case. We begin our analysis by observing that the defendant's claim of self-defense is not, in actuality, a justification defense. Although the defendant cloaks his claim in the language of self-defense, he does not seek "justification for engaging in *otherwise criminal conduct*"; (emphasis added) id., 752; but repeatedly characterizes his fatal stabbing of the victim as the unintended consequence of the struggle over the knife.[12] Thus, the defendant never concedes in his appellate brief that he *may* have stabbed the victim during their struggle; rather, he maintains that he "never denied that the death of [the victim] had occurred, unintentionally, during a struggle over a knife . . . ." He likewise declares that (1) the victim's death occurred when the victim was "unintentionally stabbed during the struggle as [he] was defending himself from [the victim's] knife attack," (2) "[he] was not aware during the struggle that [the victim] got injured," (3) "the stabbing of [the victim] was not an intended result but had unintentionally occurred during the struggle," (4) "the stabbing of [the victim] was unintended and . . . happened unintentionally during the defendant's intentional and justified self-defense struggle

---

[12] The dissent disagrees with our conclusion that the defendant does not seek justification for otherwise criminal conduct and asserts that "the defendant's theory of defense is predicated, in part, on the claim that he did, in fact, engage in conduct that otherwise would have been criminal, namely, grabbing the victim's wrist in an effort to take the knife away from him" because "seizing the victim's wrist would have constituted a criminal assault against the victim if the defendant had not reasonably believed that it was necessary to engage in that conduct to defend himself against the victim's attack." Footnote 6 of the dissenting opinion. The dissent, however, misses the crucial point that the term "criminal conduct" in the phrase "justification for otherwise criminal conduct"; *State* v. *Montanez*, supra, 277 Conn. 752; means charged conduct. Neither assault nor reckless manslaughter was charged in this case. Accordingly, a jury instruction that the defendant was justified in using nondeadly force against the victim based on such a theory would have been improper.

with [the victim] over the knife," (5) he testified that "the only intentional force used was to struggle over the knife and that the actual stabbing occurred unintentionally during the struggle," and (6) "he struggled with [the victim] over the knife in self-defense but . . . the actual stabbing occurred unintentionally . . . ." In other words, the defendant repeatedly claims that the stabbing was, for all intents and purposes, accidental.

The defendant's argument on appeal is consistent with his testimony at trial that he did not know that the victim had been wounded by the knife, even when the victim suddenly stopped struggling and staggered over to the bed. In fact, the defendant testified that he thought that the victim "was kidding" after he ceased fighting and sat down on the bed, and that it was only after the victim rolled off the bed and onto the floor that the defendant saw a bloodstain on the front of the victim's sweater and discovered the stab wound. The defendant also makes no claim that, even if the jury found that he intentionally had stabbed the victim, he acted in self-defense. Indeed, he contends that his claim *differs* from that of an accused claiming self-defense who acknowledges intentionally firing a gun or intentionally stabbing the victim but who maintains that it was necessary to do so in self-defense. Instead, the defendant repeatedly emphasizes that the stabbing in this case was "unintended," or that it "happened unintentionally" during his "intentional and justified self-defense struggle with [the victim] over the knife" and, thus, did not involve any criminal conduct. Consequently, his claim is more properly viewed as a claim of accident, or failure of proof, which raises the entirely different question of whether he *intended* to commit the crime, not whether he was justified in committing it.[13] See 1 P. Robinson, supra, Criminal Law Defenses

[13] In *State* v. *Solomon*, 103 Conn. App. 530, 535 n.1, 930 A.2d 716 (2007), the Appellate Court made a similar observation with respect to a claim of self-defense by the defendant in that case: "Contrary to the defendant's

§ 22, p. 72 ("Failure of proof defenses consist of instances in which because of the conditions that are the basis for the 'defense,' all elements of the offense charged cannot be proven. They are in essence no more than the negation of an element required by the definition of the offense."); see also id., § 51 (a), p. 203 n.1 (failure of proof defenses are "clearly distinct from justifications . . . [because] they express no general principle of exculpation or exemption").

A claim of accident, pursuant to which the defendant asserts that the state failed to prove the intent element of a criminal offense, does not require a separate jury instruction because the court's instruction on the intent required to commit the underlying crime is sufficient in such circumstances. See *State* v. *Schultz*, 100 Conn. App. 709, 716, 921 A.2d 595 (trial court's denial of defendant's request to charge on accident or unintended consequences not improper because court instructed jury on element of intent), cert. denied, 282 Conn. 926, 926 A.2d 668 (2007). We nevertheless consider whether the trial court improperly failed to instruct the jury to decide whether the defendant used deadly or nondeadly force when the state agreed with the defendant that he presented sufficient evidence to warrant a self-defense instruction and the trial court concluded that he was entitled to have one. See, e.g., *State* v. *Miller*, 55 Conn. App. 298, 300–301, 739 A.2d 1264 (1999) (defendant

claim on appeal, he did not claim self-defense . . . at trial. Rather, he specifically testified, in relation to the complainant: 'Never did I strike her. Never did I slap her, never did I push her, nothing of the sort.' He did testify, however, that he 'may have' grabbed the complainant around the neck when she attacked him, but that [he] never injured her. It appears, therefore, that the theory of defense at trial was more closely related to accident or unintended consequences rather than self-defense. . . . See *State* v. *Schultz*, 100 Conn. App. 709, 717, 921 A.2d 595, cert. denied, 282 Conn. 926, 926 A.2d 668 (2007). [A claim] of accident is unlike [a claim of] self-defense because . . . self-defense presumes an intentional but justified act, [whereas] accident presumes that any injury was unintended. Id."

need not admit to having acted intentionally to assert claim of self-defense), cert. denied, 252 Conn. 923, 747 A.2d 519 (2000).

The state claims that the trial court's instructions on self-defense were proper because, once the jury found that the defendant had the requisite intent to commit the charged offense, it necessarily would have rejected his claim of accident, or unintended consequences, thus, completely removing from the jury's consideration the issue of whether the defendant used deadly or non-deadly force during the preceding struggle. We agree.[14]

---

[11] The state correctly notes that Connecticut considers accident and self-defense separate and inherently inconsistent claims, although a defendant may raise them as alternative theories. *Shabazz* v. *State*, 259 Conn. 811, 816, 792 A.2d 797 (2002) (defendant raised separate theories of self-defense and accident when he testified that he stabbed victim in self-defense and that he stabbed victim accidentally as they tussled on ground); *State* v. *Shabazz*, 246 Conn. 746, 763, 719 A.2d 440 (1998) (same), cert. denied, 525 U.S. 1179, 119 S. Ct. 1116, 143 L. Ed. 2d 111 (1999); *State* v. *Schultz*, supra, 100 Conn. App. 717 (defendant raised separate claims of self-defense and accident); *State* v. *Miller*, supra, 55 Conn. App. 301 (defendant allowed to raise "inconsistent" claims of "self-defense" and "unintentional or accidental shooting" when he and victim allegedly struggled over gun pulled out by victim); see also *Mathews* v. *United States*, 485 U.S. 58, 64, 108 S. Ct. 883, 99 L. Ed. 2d 54 (1988) ("state cases support the proposition that a homicide defendant may be entitled to an instruction on . . . [inconsistent claims of] accident and self-defense"). The defendant, however, disregards both legal concepts. On the one hand, he refers to his claim as one of self-defense but disavows the element of intent normally associated with a justification defense. On the other hand, he argues that the victim's death was an accident, or an unintended consequence of their struggle, but asks the jury to consider the degree of force that he used in the struggle instead of focusing squarely on the issue of intent. As we indicated in our discussion in part I of this opinion, we reject both approaches because neither is legally correct.

For similar reasons, the dissent's assertion that the trial court should have instructed the jury that it could consider whether the stabbing was accidental under a theory of self-defense reflects a misunderstanding of the theory of self-defense, the charges against the defendant and the defendant's requested jury instructions. Because a theory of accident implicates the element of intent, it needs no special instruction in addition to one on the concept of intent. See *State* v. *Schultz*, supra, 100 Conn. App. 716. Moreover, the defendant characterized his requested instruction on self-defense as a justification instruction, which, unlike an instruction on intent, permits the jury to con-

The trial court instructed the jury on the elements of murder and of the lesser included offense of manslaughter in the first degree in accordance with the state's substitute information, which charged that the defendant, "with the intent to cause the death of [the victim], caused the death of [the victim] by stabbing

sider the degree of force used in the commission of the crime. See General Statutes § 53a-19 (a). Finally, insofar as the dissent suggests that the jury was not afforded an opportunity to consider whether the stabbing was accidental, we disagree. The jury heard detailed and consistent testimony from the defendant at trial that the victim had been the attacker and that the defendant did not know exactly how or when the fatal wound was inflicted during the struggle. In addition, the trial court provided the jury with a context in which to evaluate this testimony in its general instructions on intent: "Under our law, a person acts intentionally with respect to a result when his conscious objective is to cause such result. It is not necessary for the state to prove that the defendant had the requisite intent for any particular period of time before acting on it. The state must prove beyond a reasonable doubt that the defendant had the requisite intent at the time he commits the criminal conduct.

"What a man's intention has been is, very largely, a matter of inference. No witness can be expected to come here and testify that he looked into another person's mind and saw therein contained a certain intention. *A jury can determine what a person's intention was at any given time by determining what that person's conduct was, what the circumstances were surrounding that conduct, and any statements made by that person and, from those, infer what his intention was.*

"An intent may be inferred from circumstantial evidence provided such inference is reasonable and is warranted from the facts you find proven.

"Motive is not an element of the crime charged. The state is not required to prove what motive, if any, was behind the commission of a crime. Even if motive is shown, the state must still prove beyond a reasonable doubt each of the elements of a crime charged. Proof of motive or lack of proof of motive may be relevant if you find it to be so through your determination of whether the state has proven the guilt of the defendant.

"You may consider the presence or absence of motive together with all the other evidence in reaching your verdict and give it such weight which you decide is reasonable." (Emphasis added.)

In advising the jury to consider the defendant's conduct, the circumstances surrounding his conduct, any statements that he may have made concerning the incident and his possible motive, or lack thereof, for stabbing the victim, the trial court was, in effect, directing the jury to weigh the defendant's testimony that the stabbing was the unintended consequence of his struggle with the victim, which did not require consideration of whether the defendant had used deadly or nondeadly force.

him with a knife, in violation of General Statutes § 53a-54 (a)." The court specifically instructed the jury that the state must prove beyond a reasonable doubt that (1) the defendant intended to cause the victim's death or, with respect to the lesser offense of manslaughter in the first degree, that he intended to cause the victim to suffer serious physical injury, (2) the defendant, acting with that specific intent, caused the death of the victim by stabbing him with a knife, and (3) the defendant was not justified in using deadly physical force.[15] The instruction on self-defense thus required the jury to consider the force that the defendant used in stabbing the victim, not the force that he used in the struggle over the knife, because the struggle apart from the stabbing was irrelevant to the charge of murder and the lesser included offense of manslaughter in the first degree.

The defendant's and the Appellate Court's focus on the struggle preceding the stabbing is improper in this case. Once the jury found that the state had met its burden of proving beyond a reasonable doubt that the defendant intended to cause the victim serious physical injury and had caused his death by stabbing him with the knife, there was no disputed factual issue that required the jury to determine whether the defendant had used deadly or nondeadly physical force during the struggle. The defendant's intentional use of force during the struggle had *no bearing* on the ultimate question of whether he was guilty of murder or manslaughter in the first degree because both offenses were predicated on the fact that the defendant intentionally had stabbed the victim.[16]

---

[15] The instructions on the elements of causation and self-defense were identical for both murder and manslaughter in the first degree.

[16] For this reason, we also find inapposite the cases that the Appellate Court cited; see *State* v. *Singleton*, supra, 97 Conn. App. 692–95; in concluding that the trial court improperly instructed the jury on the use of deadly physical force during the struggle. See *State* v. *Whitford*, supra, 260 Conn. 631–34; *State* v. *Wayne*, 60 Conn. App. 761, 764–66, 760 A.2d 1265 (2000);

The defendant argues that the struggle over the knife was relevant to the charged crimes and that the jury was not required to find that he intended to cause the victim harm because this court has ruled that self-defense is a valid defense to unintentional crimes. See *State* v. *Hall,* 213 Conn. 579, 584, 569 A.2d 534 (1990) (rejecting claim that self-defense and reckless manslaughter are "mutually incompatible" and holding that self-defense is valid defense to unintentional crime of second degree manslaughter); see also *State* v. *Jones,* 39 Conn. App. 563, 567 n.4, 665 A.2d 910 ("[s]elf-defense is a valid defense to crimes based on reckless conduct as well as intentional conduct"), cert. denied, 235 Conn. 931, 667 A.2d 800 (1995); *State* v. *King,* 24 Conn. App. 586, 590–91, 590 A.2d 490 (stating that self-defense is valid defense to "the unintentional offense of reckless manslaughter in the first degree"), cert. denied, 219 Conn. 912, 593 A.2d 136 (1991). In the present case, however, the defendant was not charged with a crime involving recklessness but with the crime of murder, and the jury was instructed on the lesser included offense of manslaughter in the first degree, which, along with murder, requires proof of an intent to harm. The defendant also failed to request a jury instruction on a lesser included offense involving reckless or unintentional conduct or to object to the court's charge on the ground that it did not include instructions on the elements of a lesser included offense involving reckless or unintentional conduct. Accordingly, the defendant's argument is unpersuasive because he was not charged

*State* v. *Martinez,* 49 Conn. App. 738, 747–50, 718 A.2d 22, cert. denied, 247 Conn. 934, 719 A.2d 1175 (1998); *State* v. *Anderson,* 16 Conn. App. 346, 354–56, 547 A.2d 1368, cert. denied, 209 Conn. 828, 552 A.2d 433 (1988). In each of these cases, the jury was instructed to consider the issue of deadly physical force in the context of the defendant's claim of self-defense. The defendant in the present case, however, contends that the jury should have been instructed to consider the issue of deadly physical force in the context of the nonfatal struggle that preceded the stabbing, which was irrelevant to his claim of self-defense.

with, and the jury was not instructed on, a crime that would have required proof that the fatal stabbing was the unintended or reckless consequence of the defendant's struggle with the victim over the knife.

The trial court's failure to instruct the jury on nondeadly force otherwise was not improper. As we previously explained, the court repeatedly instructed the jury that it must decide whether the defendant was justified in using deadly physical force to defend himself. See footnote 10 of this opinion. "Deadly physical force" is defined in General Statutes § 53a-3 (5) as "physical force which can be reasonably expected to cause death or serious physical injury . . . ." In using the term "deadly physical force," the trial court was describing what the jury would have found as to the second element of the crime of murder or first degree manslaughter *prior* to considering the defendant's claim of self-defense, namely, that he had caused the death of the victim by stabbing him with the knife, an instrument that clearly can cause the harm contemplated by the statutory definition of "deadly physical force." Thus, an instruction directing the jury to decide whether the defendant had used nondeadly physical force in committing the crime more than likely would have been confusing because it would have suggested, incorrectly, that the victim's death might have been caused by something other than the knife or the stabbing. Accordingly, we conclude that the trial court's instructions on deadly physical force, when read in conjunction with its instructions on causation, were not improper.

The defendant essentially concedes this point in arguing, with respect to his first alternative ground for affirmance, that the victim's alleged attack on him with a screwdriver and a knife constituted the use of deadly force because "there is no question that intentionally stabbing someone with a screwdriver is the use of deadly physical force, as is then coming at that person

with a long kitchen knife." Similarly, the defendant, in criticizing the trial court for allegedly failing to instruct the jury that, if it found that he had stabbed the victim intentionally, then, and only then, could or should it find that the stabbing constituted the use of deadly physical force for the purpose of considering his claim of self-defense, in effect concedes that such an instruction would have been proper. The court, however, *did* instruct the jury that it first must find intent, and then causation, before reaching the question of whether the defendant's use of deadly physical force was reasonable under a theory of self-defense.[17] We therefore conclude

[17] The defendant argues, and the dissent agrees, that "the [trial] court flatly told the jurors that the defendant had used deadly physical force . . . even before telling them that they had to decide something about the defendant's intention when he used such deadly force. By so doing, the trial court not only improperly took from the jurors the disputed factual issue of whether the defendant used nondeadly or deadly force, but also improperly influenced the jurors' consideration of the defendant's intention by telling them as a matter of law that the defendant had used deadly force and then [by] improperly allowing them to infer [that] he intended to use that degree of force . . . ." We disagree.

As we previously explained, the trial court's failure to instruct the jury on nondeadly force was not improper. With respect to the instructions on justification and intent, we note that, before the court instructed the jury on justification, it referred to the elements of the crimes charged, stating as follows: "Almost every crime is made up of several essential elements. What the essential elements of the crimes here are, I'll explain to you in a moment. For the present, it is enough for me to say that, before a jury can return a verdict of guilty of a crime, the state must have proved every essential element of that crime beyond a reasonable doubt." The court then proceeded to give lengthy instructions on the credibility of witnesses, consciousness of guilt, and justification. Thereafter, in instructing on the elements of the relevant crimes, the court stated several times that the jury must decide, with respect to the charge of murder and the lesser offense of manslaughter in the first degree, *first*, that the defendant had the requisite intent, *second*, that, acting with the requisite intent, he caused the victim's death, and, *third*, that he was not justified in acting as he did. See part III of this opinion. Accordingly, there is no merit to the claim that the court's instructions on justification improperly influenced the jury's consideration of intent because the trial court's repeated instructions regarding the order in which the jury was to decide the elements of the crimes ensured that it would not consider justification prior to considering the elements of intent and causation. See *State* v. *Wallace*, 290 Conn. 261, 276, 962 A.2d 781 (2009)

that, in light of the defendant's concession that stabbing a person with a knife constitutes the use of deadly physical force, and the jury's findings that the defendant intended to cause the victim serious physical injury and that he caused the victim's death by stabbing him with the knife, which were made *before* the jury reached the defendant's claim of self-defense, the court's instructions as to whether the defendant was justified in using deadly physical force were not improper.

## II

The defendant also claims that the Appellate Court's judgment may be affirmed on the alternative ground that the trial court improperly had instructed the jury on the initial aggressor exception to the law of self-defense. He specifically claims that the instructions failed to make clear that (1) a person cannot be considered an initial aggressor on the basis of words alone, and (2) a person who uses nondeadly force as the initial aggressor may be justified in using deadly force in response to an unjustified escalation from nondeadly to deadly force by the victim of the attack. The state responds that the court's instructions, when considered in the context of the testimony at trial, "did not have the effect of directing the jury to conclude" that the defendant was the initial aggressor or that he unlawfully escalated the level of violence from nondeadly to deadly force.

The defendant acknowledges that his claims are unpreserved because he did not file a request to charge on the initial aggressor exception and did not object to the jury instructions on self-defense when they were given. He therefore seeks review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). "Under *Golding*, a defendant can prevail on an unpreserved

("[t]he jury is presumed, in the absence of a fair indication to the contrary, to have followed the court's instructions" [internal quotation marks omitted]).

constitutional claim on appeal only if all of the following conditions are satisfied: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. [Id.] The first two [prongs of *Golding*] involve a determination of whether the claim is reviewable; the second two . . . involve a determination of whether the defendant may prevail. . . . *State* v. *Peeler*, 271 Conn. 338, 360, 857 A.2d 808 (2004), cert. denied, 546 U.S. 845, 126 S. Ct. 94, 163 L. Ed. 2d 110 (2005)." (Internal quotation marks omitted.) *State* v. *Ray*, 290 Conn. 602, 618 n.12, 966 A.2d 148 (2009).

We conclude that the defendant's claims are reviewable under *Golding* because the record is adequate and the claim of an improper jury instruction is of constitutional magnitude. See part I of this opinion. We further conclude, however, that the defendant cannot prevail on his claims because there was no possibility that the jury was misled by the trial court's instructions, and, therefore, no constitutional violation clearly existed that deprived him of a fair trial. We address each claim in turn.

A

The defendant first claims that the Appellate Court's judgment should be affirmed on the ground that the trial court improperly failed to instruct that a person cannot be deemed the initial aggressor as a matter of law on the basis of words alone and that the qualifying act must be physical rather than verbal. He claims that such an instruction was necessary because the court's instructions suggested that a person could be deemed

the initial aggressor on the basis of words alone, even though the law is clearly to the contrary. The defendant also contends that the requested instruction was important because the state misled the jury and caused it to reject his claim of self-defense on an improper ground when the senior assistant state's attorney (prosecutor) indicated to the jury that it could, and should, find that the defendant was the initial aggressor when he threatened the victim by stating, "[y]o, I'll fuck you up," after the victim had offered to perform oral sex as a means of settling his drug debt. The state responds that the facts do not support this view and that the jury was not misled by the trial court's instructions. We agree with the state.

The following additional facts are relevant to our resolution of this claim. During closing argument, the prosecutor told the jury that "[t]he initial aggressor is the person who first acts in such a manner . . . that creates a reasonable belief in another person's mind that physical force is about to be used upon that other person." The prosecutor then argued: "Do we have a situation like that? Do we have an initial action that caused—that was threatening [and] that caused fear in [the victim]? You owe me money, I've got you in my apartment. You've seen the [diagram depicting the respective positions of the victim and the defendant in the defendant's apartment at the time of the altercation] . . . . [The defendant is] blocking [the victim's] way out of the apartment, isn't he? And [the defendant] says, 'I'm going to fuck you up,' and he starts moving toward [the victim]."

Thereafter, defense counsel argued: "Initial aggressor? [The defendant] says, 'I'm going to fuck you up,' and he goes toward [the victim], the [victim] pulls a screwdriver, and [the defendant] immediately backs up and puts his hands up. Now, [the victim is] the aggressor and he gets stabbed. And they grapple, and [the defen-

dant] disarms [the victim], and [the victim] goes back and gets [the] knife to escalate it, and [the defendant is] the initial aggressor?"

The trial court subsequently instructed the jury in relevant part: "The initial aggressor is the person who first acts in such a manner that creates a reasonable belief in another person's mind that physical force is about to be used upon that other person. The first person to use physical force is not necessarily the initial aggressor."

General Statutes § 53a-19 (c) provides in relevant part: "[A] person is not justified in using physical force when . . . (2) he is the initial aggressor . . . ." In *State* v. *Jimenez*, supra, 228 Conn. 340–41, we stated that "[i]t is not the law . . . that the person who first uses physical force is necessarily the initial aggressor under § 53a-19 (c) (2). . . . To attach such a meaning to § 53a-19 (c) (2) would run counter to the plain language of § 53a-19 (a), which states in [relevant] part that 'a person is justified in using reasonable physical force upon another person to defend himself or a third person from what he reasonably believes to be the use or *imminent* use of physical force, and he may use such degree of force which he reasonably believes to be necessary for such purpose; except that deadly physical force may not be used unless the actor reasonably believes that such other person is (1) using or *about* to use deadly physical force, or (2) inflicting or *about* to inflict great bodily harm.' " (Citations omitted; emphasis in original.)

"Read according to its plain language, and as a whole, doubtlessly § 53a-19 contemplates that a person may respond with physical force to a reasonably perceived *threat* of physical force without becoming the initial aggressor and forfeiting the defense of self-defense. Otherwise, in order to avoid being labeled the aggressor,

a person would have to stand by meekly and wait until an assailant struck the first blow before responding. If an assailant were intending to employ deadly force or [to] inflict great bodily harm, such an interpretation of the statute would be extremely dangerous to one's health. Such a bizarre result could not have been intended by the legislature." (Emphasis added.) Id., 341.

During closing argument, the prosecutor did not argue that the defendant should be considered the initial aggressor on the basis of words alone, as the defendant contends. In discussing whether the defendant was the initial aggressor, the prosecutor referred to a diagram of the defendant's apartment and reminded the jurors that the defendant had threatened the victim by blocking his egress, by telling him, "I'll fuck you up," and by advancing toward him. The prosecutor thus argued that the defendant was the initial aggressor not simply because of what he had said to the victim but also because of his physical conduct. Accordingly, we conclude that, to the extent that the defendant claims that the trial court improperly instructed the jury because the court failed to clarify or correct the mistaken impression conveyed by the prosecutor's closing argument that the defendant was the initial aggressor on the basis of his words alone, his claim must fail because the prosecutor made no such argument, and, accordingly, there was no misunderstanding to correct.

We also conclude that the trial court's instructions that "[t]he initial aggressor is the person who first acts in such a manner that creates a reasonable belief in another person's mind that physical force is about to be used upon that other person" and that "[t]he first person to use physical force is not necessarily the initial aggressor" were entirely consistent with the law and thus were proper. The instructions did not advise or imply that a person could be considered the initial aggressor on the basis of words alone. In addition, nei-

ther party argued that a person could be considered the initial aggressor on the basis of words alone. As we indicated in the preceding discussion, the prosecutor argued that the defendant was the initial aggressor as a result of the *combination* of verbal and physical conduct. Similarly, the defense argued that the victim was the initial aggressor because he had used threatening language *and* brandished a screwdriver. Accordingly, there was no suggestion by the court or by either party that the person who was the initial aggressor had threatened the other person on the basis of words alone. As a result, we conclude that there was no reasonable possibility that the jury was misled or that it rejected the defendant's claim of self-defense on improper grounds.

## B

The defendant also claims that the trial court's instructions were improper because they failed to make clear that the initial aggressor using nondeadly force who is met with deadly force by the victim may be justified in using deadly force to repel the victim.[18] He

---

[18] Defense counsel asked the court to give the following instruction on the use of force by the initial aggressor, which omitted the language that the defendant now requests: "A person is not justified in using physical force when, with the intent to cause physical injury to another person, he provokes the use of physical force by that person. However, if the [d]efendant was the initial aggressor, his use of physical force upon another is justifiable under such circumstances, if he withdraws from the encounter and effectively communicates to the other person his intent to withdraw, but the other person, notwithstanding, continues the struggle, or threatens the use of physical force. The degree of force used must be reasonable, but [a] dangerous instrumentality may be used to counter a perceived dangerous instrumentality. And when actual or apparent . . . danger from harm has ended, then the right to use that force also ends."

The trial court gave a similar instruction: "[A] person is not justified in using deadly physical force if he is the initial aggressor and does not withdraw from the encounter. The initial aggressor is the person who first acts in such a manner that creates a reasonable belief in another person's mind that physical force is about to be used upon that other person. The first person to use physical force is not necessarily the initial aggressor.

"Before an initial aggressor can use any physical force, the initial aggressor must withdraw or abandon the conflict in such a way that the fact of

claims that this principle is recognized at common law, is therefore implicit in this state's self-defense statute, and, because it is relevant to the facts of the present case, it was reversible error for the trial court to have omitted such an instruction. We disagree.

General Statutes § 53a-19 (c) provides in relevant part: "[A] person is not justified in using physical force when . . . (2) he is the initial aggressor, except that his use of physical force upon another person under such circumstances is justifiable if he withdraws from the encounter and effectively communicates to such other person his intent to do so, but such other person notwithstanding continues or threatens the use of physical force . . . ."

The language of the statute is plain and unambiguous, and provides that the initial aggressor is justified in using physical force *only* if he withdraws from the encounter and certain other conditions are satisfied. It does not provide, or suggest, that an initial aggressor who uses nondeadly force is justified in using deadly force to repel the victim's unlawful escalation of force to the deadly level.

It is well established that "we cannot accomplish a result that is contrary to the intent of the legislature as expressed in the [statute's] plain language. . . . As we

---

withdrawal is perceived by his opponent so that opponent is aware that there is no longer any danger from the original aggression.

"If you find [that] the state has proved beyond a reasonable doubt that the defendant was the initial aggressor and [that] the defendant did not effectively withdraw from the encounter or abandon it in such a way that [the victim] knew he was no longer in any danger from the defendant, you shall then find [that] the defendant was not justified in using deadly physical force.

"Bearing in mind the instructions [that] I have given you regarding justification, the state has the burden to prove beyond a reasonable doubt . . . [that] the defendant was the initial aggressor and [that] the defendant did not effectively withdraw from the encounter or effectively abandon it so that [the victim] was aware that there was no longer any danger to him."

recently have reiterated, a court must construe a statute as written. . . . Courts may not by construction supply omissions . . . or add exceptions merely because it appears that good reasons exist for adding them. . . . The intent of the legislature, as this court has repeatedly observed, is to be found not in what the legislature meant to say, but in the meaning of what it did say. . . . It is axiomatic that the court itself cannot rewrite a statute to accomplish a particular result. That is a function of the legislature." (Citation omitted; internal quotation marks omitted.) *Vincent* v. *New Haven*, 285 Conn. 778, 792, 941 A.2d 932 (2008). It is thus for the legislature, not for this court, to decide whether a second exception should be added to § 53a-19 (c) that would permit an initial aggressor to use deadly force in the manner indicated by the defendant.

Examining the trial court's instructions in light of the statutory language, we conclude that the court followed the law and properly advised the jury on the initial aggressor exception and the circumstances under which an initial aggressor is justified in using physical force against the victim. Accordingly, we reject the defendant's first alternative ground for affirmance.

III

The defendant next argues that the Appellate Court's judgment may be affirmed on the alternative ground that the trial court improperly instructed the jury on manslaughter in the first degree by stating that it could find the defendant not guilty on that charge only if the state had failed to prove "each" element of the offense rather than "any" element of the offense. The state replies that, although the instruction did not follow the statutory language precisely, the defendant's claim should be rejected because the instruction as a whole regarding the state's burden of proof did not mislead the jury. We agree with the state.

Because defense counsel did not object at trial to the instructions that are now challenged on appeal, the defendant seeks review under *State* v. *Golding*, supra, 213 Conn. 239–40. We conclude that the claim is reviewable because the record is adequate and the claim of an improper jury instruction is of constitutional magnitude. See part I of this opinion. The defendant cannot prevail, however, because there was no possibility that the jury was misled, and, accordingly, there was no constitutional violation that clearly existed and that clearly deprived him of a fair trial.

The following additional facts are relevant to our resolution of this claim. The trial court instructed on manslaughter in the first degree as follows: "A person is guilty of intentional manslaughter in the first degree when, with intent to cause serious physical injury to another person, he causes the death of such person.

"In order to prove the defendant guilty of intentional manslaughter in the first degree, the state has the burden to prove beyond a reasonable doubt [that], one, the defendant had the specific intent to cause serious physical injury to a person, and, two, acting with that specific intent, the defendant caused the death of [the victim] by stabbing him with a knife, and, three, the defendant was not justified in using deadly physical force."

The court then gave specific instructions on the meaning of "intent" and "serious physical injury," and asked the jury to recall the court's prior instructions on justification for using deadly physical force. The court then continued: "Bearing in mind the instructions [that] I have given you regarding intent, the elements of the crime of intentional manslaughter in the first degree and justification, in order to prove the defendant guilty of the crime of intentional manslaughter in the first degree, the state must prove beyond a reasonable

doubt that, one, the defendant had the specific intent to cause serious physical injury to [the victim], and, two, acting with that intent, the defendant caused the death of [the victim] by stabbing him with a knife, and, three, the defendant was not justified in using deadly physical force.

"If you find [that] the state has proven beyond a reasonable doubt *each* of these three elements of intentional manslaughter in the first degree, you shall find the defendant guilty of intentional manslaughter in the first degree. In that event, you will deliberate no more, and your deliberations are completed.

"*If you find [that] the state has failed to prove beyond a reasonable doubt each of these three elements of intentional manslaughter in the first degree, you shall find the defendant not guilty of intentional manslaughter in the first degree.* In that event, you will deliberate no more, and your deliberations are completed." (Emphasis added.)

After the court gave its instructions, the prosecutor noted that the court should have referred to "any" element of the offense in the last part of the instruction on finding the defendant not guilty, but the court replied that it believed the instruction was sufficient as given. Defense counsel did not submit a request to charge on manslaughter in the first degree, raised no objection to the instructions that were given, and referred to the instructions as "[s]hort and sweet, just like I like it." Thereafter, the court reinstructed the jury in the same manner in response to the jury's request for complete reinstructions, at which time defense counsel again raised no objection.

It is well established that a defendant "is entitled to have the jury correctly and adequately instructed on the pertinent principles of substantive law." (Internal quotation marks omitted.) *State* v. *Ortiz*, 252 Conn. 533,

560, 747 A.2d 487 (2000). Moreover, "[i]f justice is to be done . . . it is of paramount importance that the court's instructions be clear, accurate, complete and comprehensible, particularly with respect to the essential elements of the alleged crime." (Internal quotation marks omitted.) *State* v. *Williamson*, 206 Conn. 685, 709, 539 A.2d 561 (1988). Nevertheless, "[t]he charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge." (Internal quotation marks omitted.) *State* v. *Salamon*, 287 Conn. 509, 573, 949 A.2d 1092 (2008). In reviewing the charge as a whole, "[the] instructions need not be perfect, as long as they are legally correct, adapted to the issues and sufficient for the jury's guidance." *State* v. *Parent*, 8 Conn. App. 469, 476, 513 A.2d 725 (1986). "The test to be applied to any part of a charge is whether the charge considered as a whole presents the case to the jury so that no injustice will result." (Internal quotation marks omitted.) *State* v. *Mullings*, 166 Conn. 268, 275, 348 A.2d 645 (1974). "In this inquiry we focus on the substance of the charge rather than the form of what was said not only in light of the entire charge . . . but also within the context of the entire trial." (Internal quotation marks omitted.) *State* v. *Lawrence*, 282 Conn. 141, 179, 920 A.2d 236 (2007).

We conclude that, although the court improperly instructed that the jury should find the defendant not guilty if the state failed to prove "each," instead of "any," element of manslaughter in the first degree, the instructions as a whole were not misleading. The court first named the three elements that the state was required to prove for the jury to find the defendant guilty in light of his claim of self-defense, namely, intent, causation and the unjustified use of deadly physical force. The court next described each of the elements in detail. It then summarized the three elements and

reiterated one last time that, if the state proved *each* of the three elements, the jury shall find the defendant guilty. Thus, in light of the fact that the court referred *four times* to the fact that the state would have to prove all three elements in order for the jury to find the defendant guilty, there was no possibility that the jury was improperly led to believe that it could find the defendant not guilty only if the state failed to prove every element of the offense beyond a reasonable doubt. See *State* v. *Wade*, 106 Conn. App. 467, 491–92, 942 A.2d 1085 (viewing jury charge as whole and finding no "meaningful distinction" between instruction that jury shall find defendant not guilty if state failed to prove "each," instead of "any," element of offense), cert. granted on other grounds, 287 Conn. 908, 950 A.2d 1256 (2008) (appeal withdrawn June 12, 2008). Accordingly, we conclude that the defendant cannot prevail on his second alternative ground for afffirmance.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to affirm the judgment of the trial court.

In this opinion NORCOTT and VERTEFEUILLE, Js., concurred.

PALMER, J., with whom KATZ, J., joins, dissenting. I agree with the defendant, Ronald M. Singleton, that the Appellate Court correctly concluded that the trial court had violated his constitutional right to present a defense by failing to instruct the jury on the defendant's primary theory of defense. See *State* v. *Singleton*, 97 Conn. App. 679, 680, 696–97, 905 A.2d 725 (2006). I also agree with the defendant and the Appellate Court that the instructional impropriety constituted harmful error requiring a new trial. Id., 697–98. Accordingly, I respectfully dissent.

The majority opinion sets forth the facts that the jury reasonably could have found. The following additional facts and procedural history, however, also are relevant to the issue on appeal. At trial, the defendant testified that the victim came to his apartment to pay him for a quantity of drugs that the defendant had provided to the victim. After the two men spoke for a few minutes, and without mentioning his drug debt, the victim indicated that he was leaving. The defendant told the victim that he wanted to be paid for the drugs. The victim began "babbling," and the defendant moved toward the victim, stating that he was "going to fuck [him] up." The victim then removed a screwdriver from his pocket, prompting the defendant to back away. The victim continued toward the defendant and stabbed him in the chest with the screwdriver. The defendant then grabbed the victim, causing him to drop the screwdriver. The physical altercation between the defendant and the victim continued, but, eventually, they separated. At that time, the victim grabbed a knife from the defendant's kitchen counter. The defendant then told the victim that he was "going to jail," at which point the victim came at the defendant with the knife. According to the defendant, he "grabbed" and "bent" the victim's wrist in an effort to take the knife away from him. The defendant further testified that the two men struggled over the knife, but that, at some point, the victim stopped resisting. The victim staggered, sat down on the defendant's bed and then rolled onto the floor. When the victim did not move, the defendant approached him and observed that the knife had entered his body. The defendant insisted that he had intended only to disarm the victim and that he otherwise had not intended to cause him any harm.

The defendant raised a claim of self-defense predicated on his version of how the victim was killed. In particular, the defendant sought an instruction on the

use of nondeadly physical force against the victim based on his claim that he was justified in using the degree of force necessary to disarm the victim. The defendant also sought an instruction on the use of deadly physical force in self-defense, presumably to account for the possibility of a jury finding that, contrary to the testimony of the defendant, he had stabbed the victim with the intent to do so. In light of the defendant's trial testimony, however, it is apparent that the defendant's principal claim involved his use of *nondeadly* force against the victim, which, according to the defendant, resulted in his altercation with the victim that led to the victim's accidental stabbing death.[1] The trial court, however, did not instruct the jury on the defendant's claim that he had used, and was justified in using, nondeadly force against the victim; the court instructed the jury only on the use of deadly force in self-defense.[2] The jury found the defendant not guilty of murder but found him guilty of the lesser included offense of manslaughter in the first degree under General Statutes § 53a-55 (a) (1).[3]

---

[1] Although the defendant's request to charge contained a proposed instruction on the use of deadly physical force, it is not clear why the defendant sought such a charge in light of his testimony explaining that he had used only nondeadly force in attempting to disarm the victim. In any event, because the defendant sought such an instruction, and defense counsel did not object to the instruction when given, the trial court cannot be faulted for charging the jury on the use of deadly force. As I explain more fully hereinafter, the issue presented by this case is not whether the trial court improperly instructed the jury on deadly force but, rather, whether the court improperly failed to instruct the jury on the use of nondeadly force and, if so, whether the court's instructions on the defendant's claimed use of deadly force compounded the harm resulting from that impropriety.

[2] The trial court's charge on self-defense, in which the court explains when the use of deadly force may be justified but does not explain the use of nondeadly force, is set forth at footnote 10 of the majority opinion.

[3] General Statutes § 53a-55 provides in relevant part: "(a) A person is guilty of manslaughter in the first degree when: (1) With intent to cause serious physical injury to another person, he causes the death of such person . . . ."

On appeal to the Appellate Court, the defendant maintained, inter alia, that the trial court improperly had failed to instruct the jury on his claim of the justified use of nondeadly force against the victim. See *State* v. *Singleton,* supra, 97 Conn. App. 687. The Appellate Court agreed with the defendant that, because he had requested such a charge, and because the evidence supported the instruction, he was entitled to it. See id., 692, 696–97. The Appellate Court also determined that the trial court's instructions on self-defense were constitutionally deficient and, further, that the state could not establish that the instructions were harmless beyond a reasonable doubt. Id., 697–98. Accordingly, the Appellate Court reversed the judgment of the trial court and remanded the case for a new trial. Id., 680.

Upon the granting of certification to appeal, the state contends that the Appellate Court improperly concluded that the trial court was required to instruct the jury, in accordance with the defendant's request, on his claimed use of nondeadly force in self-defense. The majority agrees with the state, concluding that "the trial court correctly instructed that the defendant had used deadly physical force in defending himself against the victim because his claim of self-defense required a jury determination as to whether he was justified in killing the victim with a knife, thus making his theoretical use of nondeadly force during the preceding struggle irrelevant." I disagree with the conclusion of the majority, including its characterization of the defendant's claimed use of nondeadly force as "theoretical . . . ."

Before explaining my disagreement with the majority, I note that certain well established principles govern this court's analysis of the issue presented by this appeal. "A fundamental element of due process is the right of a defendant charged with a crime to establish a defense." (Internal quotation marks omitted.) *State* v. *Davis,* 261 Conn. 553, 573, 804 A.2d 781 (2002); see

also *State* v. *Wright*, 273 Conn. 418, 424, 870 A.2d 1039 (2005) ("[t]he sixth amendment to the United States constitution require[s] that criminal defendants be afforded a meaningful opportunity to present a complete defense" [internal quotation marks omitted]). Thus, "[i]f [a] defendant asserts a recognized legal defense and the evidence indicates the availability of that defense . . . the defendant is entitled, as a matter of law, to a theory of defense instruction." (Internal quotation marks omitted.) *State* v. *Lynch*, 287 Conn. 464, 470, 948 A.2d 1026 (2008). Moreover, "[a] defendant is entitled to have instructions presented relating to any theory of defense for which there is any foundation in the evidence, no matter how weak or incredible . . . ." (Internal quotation marks omitted.) *State* v. *Davis*, supra, 573.

With respect to the adequacy of the instructions, "[t]he test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . Thus, we must determine whether the charge as a whole presents the case to the jury so that no injustice will be done. . . . [The] [j]ury instructions need not be exhaustive, perfect, or technically accurate. . . . Nevertheless, the trial court must correctly adapt the law to the case in question and must provide the jury with sufficient guidance in reaching a correct verdict. . . . In determining whether the trial court's instructions meet this standard, we review the jury charge in the context of the factual issues raised [in each case]." (Citations omitted; internal quotation marks omitted.) *Daley* v. *Aetna Life & Casualty Co.*, 249 Conn. 766, 786, 734 A.2d 112 (1999). It therefore has been stated that, "[t]o pass constitutional muster, jury instructions must be correct in law, adapted to the issues in the case and

sufficient to guide the jury in arriving at a verdict."
(Internal quotation marks omitted.) *State* v. *Bailey*, 82
Conn. App. 1, 8, 842 A.2d 590, cert. denied, 269 Conn.
913, 852 A.2d 744 (2004). Finally, when, as in the present
case, the instruction implicates an issue of constitu-
tional magnitude, the question to be resolved on appeal
is whether it is reasonably possible that the jury was
misled by the court's instructions. *State* v. *Davis*, supra,
261 Conn. 564.

I now turn to the reason for my disagreement with
the majority, which stems primarily from the fact that
the trial court, in instructing the jury, repeatedly
explained, in clear and unequivocal language, that the
defendant's *sole* claim was that *he had, in fact, used
deadly physical force* against the victim, that is, he
had intentionally stabbed the victim, but that he was
justified in doing so. As I have indicated, however, that
was *not* the defendant's primary claim. Indeed, it was
not the claim that the defendant raised in his trial testi-
mony. At trial, the defendant steadfastly maintained
that he had used nondeadly force in attempting to wrest
the knife away from the victim, that he was justified in
using such force, and that the victim accidentally was
stabbed to death during the ensuing altercation. The
trial court, however, *never instructed the jury on this
primary theory of defense,* that is, that the victim was
killed accidentally when the defendant justifiably used
nondeadly force in defending himself against what he
reasonably believed was the victim's imminent knife
attack against him. Instead, the trial court repeatedly
asserted in its jury instructions that the defendant's
claim was predicated on his contention that his use of
*deadly* force was justified. By instructing the jury in
this manner, the trial court effectively removed the
defendant's principal defense from the jury's consid-
eration.

The contrary conclusion of the majority is flawed because that conclusion is founded on the state's argument that, "once the jury found that the defendant had the requisite intent to commit the charged offense, it necessarily would have rejected his claim of accident, or unintended consequences, thus, completely removing from the jury's consideration the issue of whether the defendant used deadly or nondeadly force during the preceding struggle." This contention ignores the import of the trial court's instructions on the defendant's claimed use of deadly force in self-defense. The court *repeatedly* instructed the jury that the defendant was claiming to have used deadly force in self-defense, and the court did so *before* instructing the jury on the elements of homicide. In other words, the court first explained to the jury that "[t]he defendant claims [that] he acted in self-defense. *In claiming that he acted in self-defense, the defendant is claiming that his use of deadly physical force was justified.*

" 'Deadly physical force' means physical force which can be reasonably expected to cause death or serious physical injury. . . . 'Serious physical injury' means physical injury which creates a substantial risk of death, or which causes serious disfigurement, serious impairment of health or serious loss or impairment of any bodily organ." (Emphasis added.) The court further explained that, "[a]lthough the defendant raised the defense of justification, the state has the burden to prove beyond a reasonable doubt that *the defendant was not justified in using deadly physical force.*" (Emphasis added.)

Thereafter, and before instructing the jury on what the state was required to prove to establish the elements of the crime of intentional first degree manslaughter, the trial court repeatedly underscored for the jury that the defendant affirmatively was asserting that he had used deadly physical force against the victim in self-

defense. In light of these instructions, the jury necessarily was led to believe that the defendant's *sole* claim was predicated on his acknowledgement that he had, in fact, used deadly force against the victim, that is, he intentionally had stabbed the victim, but was justified in doing so. For example, the court explained: (1) "a person is not justified in using deadly physical force when, *at the time he uses deadly physical force,* he does not reasonably believe [that] the other person is about to use deadly physical force against him or about to inflict great bodily harm to him"; (emphasis added); (2) "[i]n deciding whether or not the state has proved beyond a reasonable doubt *that the defendant was not justified in using deadly physical force,* you will first focus on the defendant"; (emphasis added); (3) "[y]ou first focus on what he, in fact, believed *at the time he used deadly physical force* . . . [and] then . . . focus on whether the defendant's belief was reasonable under all the circumstances that existed *when he used deadly physical force*"; (emphasis added); (4) "[t]he act of [the victim] *leading to the defendant's use of deadly physical force* need not be an actual threat or assault"; (emphasis added); (5) "you must . . . decide whether the *defendant reasonably believed that deadly physical force as opposed to a lesser degree of force was necessary* to repel [the victim's] attack"; (emphasis added); (6) "you must decide whether, on the basis of all the evidence presented . . . *the defendant, in fact, believed that he needed to use deadly physical force as opposed to some lesser degree of force* in order to repel the [victim's] attack"; (emphasis added); (7) "[i]f you decide [that] the *defendant did not . . . believe [that] he needed to use deadly physical force to repel the [victim's] attack,* your inquiry ends, and the defendant's self-defense claim must fail"; (emphasis added); (8) "[i]f . . . you find [that] *the defendant . . . did believe that the use of deadly physical force was necessary,* you

must then decide whether that belief was reasonable under the circumstances"; (emphasis added); (9) "[i]f you find [that] the state has proved . . . that the defendant was the initial aggressor and [that] the defendant did not effectively withdraw from the encounter or abandon it in such a way that [the victim] knew he was no longer in any danger from the defendant, you shall then find [that] *the defendant was not justified in using deadly physical force*"; (emphasis added); and (10) "the state has the burden to prove . . . [that] . . . *the defendant did not . . . believe he needed to use deadly physical force to repel the [victim's] attack . . .* or . . . [that] *the defendant did not have a reasonable basis for his belief that he needed to use deadly physical force to repel the [victim's] attack.*" (Emphasis added.)

Following these instructions on the defendant's use of deadly physical force in self-defense—instructions that comprised six full pages of transcript—the trial court finally explained the elements of the crime of intentional manslaughter. In doing so, however, the court again expressly repeated the state's burden of disproving the defendant's claim that he justifiably had used deadly force against the victim. Thus, the court instructed the jury that, "[i]n order to prove the defendant guilty of intentional manslaughter in the first degree, the state has the burden to prove beyond a reasonable doubt [that], one, the defendant had the specific intent to cause serious physical injury to a person, and, two, acting with that specific intent, the defendant caused the death of [the victim] by stabbing him with a knife, and, three, the defendant was not justified in using deadly physical force." By this point in the instructions, the jury already had been instructed repeatedly that the defendant himself was claiming that he had used deadly force against the victim by stabbing him with the knife, but that his use of such force was justified. In other words, the court effectively had

instructed the jury that the defendant had *conceded* the elements of the crime of intentional manslaughter— that is, he had stabbed the victim, thereby causing his death, with the specific intent to cause serious physical injury to the victim—and that his sole claim was that he was justified in doing so because he reasonably believed that the victim intended to kill him with the knife or to cause him serious bodily injury with it.[4]

The majority contends that the defendant's real claim is one of accident, and that such a claim does not warrant a special instruction. According to the majority, a defense theory of accident is adequately covered by the court's instructions on intent. It may be true that it is not always necessary for a court to instruct the jury expressly on a defendant's claim of accident because such a theory generally will be explained adequately by the court's instructions on intent. That certainly is not the case here, however, because, as I previously explained in detail, by the time the trial court instructed the jury on the element of intent, the jury already had been apprised, on numerous occasions, of the defendant's own contention that he did indeed engage in conduct *intended to cause the defendant to suffer serious physical injury*, but that he was justified in doing so. Consequently, for purposes of the present case, it is manifestly unreasonable to presume that the trial court's instructions on intent were sufficient to provide the jury with a fair and understandable explanation of

[4] To reiterate, that was *not* the defendant's sole claim, or even his principal claim. Most importantly, it was not the claim that the defendant raised on the basis of his own trial testimony. As I previously discussed, the defendant testified that he was justified in engaging the victim physically—that is, he was justified in using *nondeadly* force against the victim—in an effort to take the knife away from the victim as the victim approached him. The court's failure to instruct the jury on the defendant's primary theory of defense, as the defendant had requested, was improper, and undoubtedly was confusing to the jury in light of the defendant's testimony that his use of force was limited to *nondeadly* force.

the defendant's principal theory of defense, that is, that the victim was stabbed accidentally in the altercation arising out of the defendant's justified use of nondeadly force against the victim. In other words, the majority is misguided in concluding that the court's instructions on intent were sufficient to inform the jury of the defendant's primary theory of defense because those instructions unambiguously informed the jury that the defendant *was not contesting the element of intent* in light of his claim that he intentionally had used deadly physical force against the victim in self-defense.

It therefore is unfair for the majority to assert that the defendant's primary theory of defense was adequately addressed by the trial court's instructions on the element of intent. Without question, the trial court's repeated instructions concerning the defendant's claim that he intentionally had used deadly physical force against the victim made it clear to the jury that the defendant was conceding the elements of intentional manslaughter, but that his use of deadly force was justified. In light of these instructions—and in light of the court's complete failure to instruct the jury on the theory of defense raised by the defendant's testimony at trial—it cannot reasonably be maintained that the court's charge on intent was sufficient to guide the jury as to the defendant's claim concerning the manner in which the victim had been killed.[5]

---

[5] The majority asserts that there is no merit to the defendant's claim that the trial court's instructions on the justified use of deadly force, without more, "improperly influenced the jury's consideration of intent because the trial court's repeated instructions regarding the order in which the jury was to decide the elements of the crimes ensured that it would not consider justification prior to considering the elements of intent and causation." Footnote 17 of the majority opinion. I disagree that the court's enumeration of the three elements that the state was required to prove, namely, intent, causation and lack of justification, was sufficient to inform the jury that it could not predicate a finding of intent on the defendant's own acknowledgement that he had used deadly physical force against the victim. In the absence of such an instruction, the jury was free to conclude that the defendant had formed the intent necessary to commit the crime of intentional

It is true, of course, that the defendant's claimed use of nondeadly force in self-defense is not a *complete* defense to the crime of intentional manslaughter under § 53a-55 (a) (1). This is so because an element of that offense is the intentional infliction of "serious physical injury," a term that is defined as "physical injury which creates a substantial risk of death, or which causes serious disfigurement, serious impairment of health or serious loss or impairment of the function of a bodily organ . . . ." General Statutes § 53a-3 (4). There can be no doubt that the defendant's claimed attempt to disarm the victim by grabbing the victim's wrist did not constitute conduct intended to cause "serious physical injury." In contrast, "deadly physical force" is defined as "physical force which can be reasonably expected to cause death *or serious physical injury* . . . ." (Emphasis added.) General Statutes § 53a-3 (5). Thus, it is the justified use of *deadly force*, rather than the use of nondeadly force, that serves as a defense to the crime of intentional manslaughter. Consequently, when the state alleges that a defendant has committed intentional manslaughter, a claim by that defendant that he used only nondeadly physical force in self-defense cannot *alone* serve to relieve him of responsibility for that crime. In the present case, the defendant raised a justification defense—that is, he claimed that he was justified in forcibly attempting to take the knife away from the advancing victim—*along with* the claim that the victim was killed when, wholly by accident, the knife entered the victim's body during the altercation between the victim and the defendant.[6]

manslaughter merely on the basis of the defendant's claim that he did, in fact, intend to use deadly force on the victim. Thus, the mere enumeration of the elements of the offense of intentional manslaughter was not a substitute for an instruction on the defendant's primary theory of defense—a theory predicated on the defendant's claim that he did *not* use deadly force—because of the court's repeated instructions concerning the defendant's own assertion that he had used such force.

[6] The majority asserts that the defendant's contention that he was justified in using nondeadly force is not a legitimate claim of self-defense because,

This claim represented the defendant's theory of defense, and there was ample evidence to support it, namely, the defendant's own testimony. The trial court therefore was obligated to instruct the jury on that defense theory. In failing to do so, the court effectively removed that defense from the jury's consideration. Instead, the court instructed the jury only on the defendant's use of deadly physical force. Because the defendant expressly testified that he had used nondeadly force and *not* deadly force, the court's failure to explain to the jury the significance of the defendant's claim that he justifiably had used nondeadly force, coupled with the court's initial instructions, in which it repeatedly characterized the defendant as acknowledging his use of deadly force, necessarily was prejudicial. In fact, the court provided the jury with no guidance for evaluating the version of the facts set forth by the defendant in his testimony.[7]

"[i]n Connecticut, self-defense is a justification for engaging in *otherwise criminal conduct*"; (emphasis in original); and, according to the majority, the defendant is claiming that the victim was killed accidentally and not as a result of the defendant's criminal conduct. Thus, the majority asserts that, "[a]lthough the defendant cloaks his claim in the language of self-defense, he does not seek justification for engaging in *otherwise criminal conduct* . . . ." (Emphasis in original; internal quotation marks omitted.) The majority misses the point. The defendant's theory of defense is predicated, in part, on the claim that he did, in fact, engage in conduct that otherwise would have been criminal, namely, grabbing the victim's wrist in an effort to take the knife away from him. In other words, the defendant's conduct in seizing the victim's wrist would have constituted a criminal assault against the victim if the defendant had not reasonably believed that it was necessary to engage in that conduct to defend himself against the victim's attack. It therefore is clear that the defendant's conduct toward the victim would be criminal if it were not found to be justified, and that that conduct constituted an integral component of the defendant's theory of defense. Consequently, the defendant was entitled to an instruction on his claim that he was justified in using nondeadly force against the victim.

[7] I note that the majority views claims of justification and accident as inconsistent. As the Appellate Court correctly observed; see *State* v. *Singleton*, supra, 97 Conn. App. 697 n.17; those claims are not necessarily inconsistent, and they do not conflict in the present case. On the contrary, they are fully compatible with one another. Under the defendant's theory, he

Thus, contrary to the majority's assertion, the defendant's claimed use of nondeadly force was not "theoretical" at all because the defendant expressly testified to the use of nondeadly force. Moreover, the defendant had a constitutionally protected right to have a properly instructed jury consider his claim that he had used nondeadly force in attempting to disarm the victim inasmuch as his alleged use of such force was essential to his theory of defense.[8] Because the jury was not so instructed, the Appellate Court was correct in concluding that the defendant is entitled to a new trial.[9] I therefore dissent.

---

justifiably used nondeadly physical force against the victim in an effort to take the knife away from him, and, while doing so, the victim accidentally was stabbed and killed. There is nothing inconsistent about the defendant's version of how the victim died. Indeed, even if the defendant had raised inconsistent defenses, he still would have been entitled to an instruction on them. See *Mathews* v. *United States*, 485 U.S. 58, 64, 108 S. Ct. 883, 99 L. Ed. 2d 54 (1988).

[8] In addition to asserting that the trial court's instructions on intent were adequate to inform the jury of the defendant's principal theory of defense, the majority contends that the defendant's testimony provided a satisfactory basis on which the jury could find that the victim was killed accidentally after the defendant had used nondeadly force in attempting to disarm the victim. I disagree with the majority that the defendant's testimony excuses the trial court's failure to instruct the jury on the defendant's theory of accident because a defendant is constitutionally entitled both to *present* his or her defense *and* to have the court *instruct the jury* as to the legal basis on which that defense is founded. See, e.g., *State* v. *Lynch*, supra, 287 Conn. 470 (defendant is constitutionally entitled to "a theory of defense instruction"). As I have explained, in the present case, the court failed to provide the jury with such an instruction.

[9] Because I would uphold the Appellate Court's reversal of the defendant's conviction, I need not address the defendant's alternative grounds for affirming the Appellate Court's judgment. See, e.g., *Sterns & Wheeler, LLC* v. *Kowalsky Bros., Inc.*, 289 Conn. 1, 7 n.9, 955 A.2d 538 (2008).